STATE of Wisconsin, Plaintiff-Respondent,

v.

Louis M. MAINIERO, Defendant-Appellant.†

Court of Appeals

*No. 93–2486–CR. Oral argument July 27, 1994.—Decided November 2, 1994.*

(Also reported in 525 N.W.2d 304.)

†Petition to review denied.

On behalf of the defendant-appellant, there were briefs by *Stephen M. Glynn* and *Robert R. Henak* of *Shellow, Shellow & Glynn, S.C.* of Milwaukee. There were oral arguments by *Stephen M. Glynn*.

On behalf of the plaintiff-respondent, there was a brief by *James E. Doyle*, attorney general, and *Marguerite M. Moeller*, assistant attorney general. There were oral arguments by *Marguerite M. Moeller*.

Before Anderson, P.J., Brown and Snyder, JJ.

SNYDER, J. Louis M. Mainiero appeals from judgments of conviction for sexual contact with a person under the age of sixteen and criminal trespass to a dwelling. Mainiero offers three arguments on appeal: (1) the trial court's refusal to disclose the complainant's psychiatric records denied him due process and a fair trial, (2) the trial court improperly admitted irrelevant evidence to suggest his bad character for sexual morality which was highly prejudicial, and (3) the trial court improperly permitted the State to submit evidence of the complainant's prior consistent statements. We are unpersuaded by Mainiero's arguments and affirm.

## I. FACTS

Mainiero was charged with two counts of sexual assault in violation of § 948.02(2), STATS., for touching the breasts and vagina of his children's fifteen-year-old babysitter. Mainiero was also charged with one misdemeanor count of trespass to a dwelling contrary to § 943.14, STATS., arising out of an incident where Mainiero entered the babysitter's home looking for her

after she made the sexual assault allegations against him. The jury found Mainiero guilty of sexual contact with the babysitter's breasts and the trespass charge, but not guilty of sexual contact with her vagina. The trial court sentenced him to six years incarceration on the sexual contact charge and a consecutive two-year term of probation on the misdemeanor trespass. Mainiero appeals from the judgments of conviction.

Based upon the lack of witnesses or physical evidence, this case centered around the credibility of the complainant's and Mainiero's testimony. In March of 1992, the fifteen-year-old complainant alleged that Mainiero had been improperly touching her on many occasions during the five-month period since she began babysitting for Mainiero's children. Specifically, the complaint alleged that on February 9, 1992, Mainiero touched her breasts while giving her a massage and that he subsequently began touching her buttocks and vagina with his hand. After making these allegations, the complainant was admitted to the Waukesha Memorial Hospital psychiatric unit because she was emotionally distraught and claimed to be suicidal.

Mainiero vigorously denied any improper sexual contact with the babysitter. He testified that as a hobby, he and his wife had received formal instruction in various massage techniques, including full-body massages where the recipient is fully or partially unclothed underneath a sheet. He stated that he often performed such massages for men and women, including the Mainieros' babysitters and their mothers, without any previous allegations of sexual impropriety. We will recite additional relevant facts as necessary in our discussion of the issues.

## II. PSYCHOLOGICAL EVIDENCE

Prior to trial and pursuant to Mainiero's motion, the trial court performed an in camera review of the complainant's psychiatric records related to her treatment at Waukesha Memorial Hospital. Mainiero requested disclosure of the records to the extent that they were exculpatory or reflected prior statements of the complainant. *See* § 971.24, STATS. Mainiero also filed a motion in limine to bar the State from introducing evidence concerning the complainant's hospitalization in the psychiatric unit, arguing that such information was irrelevant and unfairly prejudicial. The trial court denied Mainiero's motion and, after reviewing the psychiatric records, refused to disclose any part of them to Mainiero for his defense. The trial court informed both parties of its decision in open court, but at some later point dictated a more detailed decision in chambers.

The trial court's dictated decision was not available to the parties until it was transcribed after trial for purposes of this appeal. The trial court concluded that the reports indicated that the complainant was depressed and suffering from posttraumatic stress disorder caused by the alleged sexual assault. Although the court concluded that the primary focus of the reports dealt with the ramifications of the sexual assault allegations, the court also noted that the complainant "may also have been sad or grieving the death of a friend from leukemia during the month of January, 1992."[1]

---

[1] The trial court concluded in relevant part:

That [the complainant] was hospitalized for attempted suicide or suicidal ideations; that she was ultimately diagnosed as number one, being depressed, and number two, as suffering from post-

On appeal, Mainiero argues that the trial court's refusal to disclose the complainant's psychiatric records denied him his constitutional rights to due process and a fair trial. He contends that it was fundamentally unfair to permit the State to rely on an inference that the complainant's hospitalization was caused by the sexual assault while denying him the opportunity to challenge the basis for that inference. Mainiero argues that this is especially true in light of the posttrial revelation by the court that the complainant may have been grieving the death of a friend at the same time she was hospitalized, thereby presenting an alternative to the State's cause and effect theory.

The issue to be decided is whether the trial court erred in refusing to release the complainant's psychiatric records to Mainiero following its in camera review. Therefore, we must determine whether the records contain information material to the defendant that "probably would have changed the outcome of [Mainiero's] trial." *Pennsylvania v. Ritchie*, 480 U.S. 39, 58 (1987).

---

traumatic stress disorder. The overall theme of the reports deals with her treatment with that depression, self-respect issues and so on, and the only cause that is recited in those reports pertains to the allegations of sexual assaults made against Mr. Mainiero. There is reference in the report that [the complainant] may also have been sad or grieving the death of a friend from leukemia during the month of January, 1992, but the primary focus of the reports again deals with the sexual assault allegations and her inability to cope with the ramifications of that event.... It is further the court's review of those documents that in reference to the sexual assault, the court was not aware of any contradictory statements from the information I gleaned in the criminal complaint and the nature of the charges. Based on that review of the documents, it is the court's opinion that there is nothing contained therein that would be reasonable and necessary for a presentation of the defense's case or cross examination of [the complainant].

"[E]vidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome." *Ritchie*, 480 U.S. at 57 (quoting *United States v. Bagley*, 473 U.S. 667, 682 (1985) (plurality opinion)). Findings of fact made by a trial court in determining whether information in the records is material are reviewed under the clearly erroneous standard. *State v. Shiffra*, 175 Wis. 2d 600, 605, 499 N.W.2d 719, 721 (Ct. App. 1993). However, to ensure consistency in the scope of constitutional protections, we independently apply the constitutional principles involved to the facts as found by the trial court. *State v. Maday*, 179 Wis. 2d 346, 353, 507 N.W.2d 365, 369 (Ct. App. 1993).

Mainiero contends that the psychiatric records were material to his defense because: (1) they contain prior statements of the complainant which may be inconsistent with her statements made in court regarding the sexual assault, and (2) they contain exculpatory information inconsistent with the State's cause and effect argument. We disagree.

The trial court found that the only cause of the complainant's emotional state recited in the reports pertained to the allegations of sexual assault made against Mainiero. Based on this finding, the court opined that "there is nothing contained therein that would be reasonable and necessary for a presentation of the defense's case or cross examination of [the complainant]." We have independently reviewed the records and conclude that the trial court's factual findings are not clearly erroneous and that the records do

not contain information that probably would have changed the outcome of the trial.

Mainiero places a great deal of emphasis on the trial court's remark that the complainant may have also been distraught over the recent death of her friend. Based upon our review of the records, we cannot conclude that there is a reasonable probability that the result of the trial would have been different had this been disclosed to the defense. As the trial court indicated, the only cause identified by the complainant's treating professionals for her depression and suicidal ideations was the alleged sexual assault. This was the entire focus of her stay and treatment at the psychiatric unit.

Mainiero also contends that allowing the State to use evidence of the complainant's hospitalization while denying him access to the psychiatric records was fundamentally unfair, relying on our decision in *Maday*. In *Maday*, we recognized that a defendant's right to a fair trial must be balanced against the consequential invasion of the victim's privacy and the potential harm to the victim. *Maday*, 179 Wis. 2d at 358, 507 N.W.2d at 371. We conclude that Mainiero's interest in a fair trial was appropriately protected by the trial court's in camera review of the complainant's psychiatric records. *See Ritchie*, 480 U.S at 60.

In *Maday*, the State proposed to present testimony from five expert witnesses that the behaviors exhibited by the complainants of sexual assault were consistent with the behaviors of sexual abuse victims whom the experts had dealt with in the past. In response, defendant Maday moved that the trial court require the victims to submit to psychological examinations by psychologists of his choice. *Maday*, 179 Wis. 2d at 350,

507 N.W.2d at 368. The trial court denied the request. *Id.* at 351, 507 N.W.2d at 368.

On appeal, this court held that Maday was entitled to a pretrial psychological examination of the complainants based upon fundamental fairness. *Id.* at 357, 507 N.W.2d at 370-71. We concluded that a fair trial could not be guaranteed by responsive mechanisms such as cross-examination and argument where the State was relying on experts who had previously examined the victims because such personal interviews are the foundation for a credible opinion by a psychologist. *Id.* at 355-57, 507 N.W.2d at 370-71. We further concluded that allowing the State to present such testimony while preventing the defendant from doing the same gave the State an improper strategic advantage and deprived the defendant of a level playing field. *Id.* at 357, 507 N.W.2d at 370.

Mainiero relies on the fundamental fairness rationale of *Maday* and asserts that because the State chose to place into issue the complainant's psychiatric hospitalization as corroboration of the sexual assault allegations, he should be given access to the complainant's records in order to counter the State. He also argues that "given the state's reliance upon the conclusions of those professionals on the issue of causation, the revelation of information concerning an alternative cause . . . would have entitled Mr. Mainiero to an independent psychiatric examination." We disagree.

The facts and circumstances here differ from those in *Maday*. In *Maday*, the State was responsible for generating the psychological evidence at issue, whereas here the complainant sought psychiatric treatment independent of the State. More importantly, unlike *Maday*, where the State intended to present expert testimony from five experts, the State in this

case did not introduce any expert testimony regarding the complainant's psychiatric condition after making the sexual assault allegations. Therefore, the strategic advantage caused by the State using experts who personally interviewed the complainants in *Maday* is absent in this case.

Further, unlike in *Maday*, responsive mechanisms such as cross-examination and argument were sufficient in this case to guarantee Mainiero a fair trial. Here, the State offered testimony by the complainant that she entered the hospital for psychiatric treatment for depression related to the alleged sexual assault. The State did not rely on any expert testimony, nor did it rely on or introduce any portion of the complainant's records. Therefore, nothing precluded Mainiero from effectively challenging the State's cause and effect theory through cross-examination of the complainant. Mainiero's counsel could have asked the complainant if there were any other reasons why she might have been depressed and suicidal at the time she was admitted to the psychiatric unit. If after her answer the trial court believed that information in her psychiatric records was material to the fairness of the trial, it would have been obligated to release such information.[2] *Ritchie,*

[2] It is clear from the record that the trial court recognized its duty to disclose material information and was prepared to do so if testimony revealed the materiality of anything in the complainant's records. In making its initial determination that there was nothing in the records necessary for Mainiero's defense, the trial court stated:

> That, in my estimation may be subject to change as the testimony develops if somebody testifies to the contrary and there may as develops be a prior inconsistent statement embodied in those documents, but at this point I do not see that and that is the initial ruling of the court.

480 U.S. at 60. Therefore, we cannot conclude that Mainiero was deprived of a level playing field.

In sum, we conclude that the court's in camera review of the records was sufficient to serve Mainiero's constitutional rights to due process and a fair trial while protecting the privacy rights of the complainant.

## III. CHARACTER EVIDENCE

Prior to trial, the State filed a motion in limine to prevent Mainiero from presenting the testimony of other babysitters for Mainiero's children who were not sexually assaulted by him. The State argued that such evidence was improper under § 904.04, STATS., which generally prohibits the use of character evidence for the purpose of proving that the person acted in conformity on a particular occasion. Mainiero asserted that such evidence was admissible under § 904.04(1)(a), which allows character evidence offered by an accused to rebut the State's evidence. In doing so, Mainiero's counsel explained the scope of such testimony as follows:

> I submit that I ought to be allowed to put in testimony of the defendant's . . . good character which would be pertinent to the charge here and that is *his good character for sexual morality*, for decency, for being non exploitive with children.. . . [The prior babysitters] will testify if allowed that they believe him to be of *good character for sexual morality, decency, respect for women*, those topics. [Emphasis added.]

The State then informed the court that if the issue of sexual morality was presented, it would most likely present rebuttal witnesses on that issue. The trial

court deferred ruling on the admissibility of such evidence until after the State's case.

Subsequently, Mainiero's counsel narrowed the purpose for which he proposed presenting the former babysitters' testimony. Following jury selection, counsel stated:

> [W]hat I am looking to do is put in evidence of his character for not being sexually exploitive of children; that is, we are not talking about anything beyond that.

In his offer of proof on the matter, counsel stated:

> I would then ask them whether or not on the basis of the interaction with Mr. Mainiero . . . they have been able to form an opinion as to *his character for sexual morality in terms of dealing with people who are in his house spending the night as baby-sitters.*. . . I would offer that testimony for a very limited purpose of showing what I perceive to be a pertinent character trait offered by the defense to demonstrate that he can in this circumstance be inferred to have acted in accordance with that character. [Emphasis added.]

Over the State's objection, the trial court allowed the testimony of the babysitters. Both testified that Mainiero had given them massages on numerous occasions but that he had never engaged in any improper sexual behavior with them.

During its cross-examination of Mainiero, the State asked him whether he had an "open" or sexual relationship with Susan Saliga, an adult. Mainiero's counsel objected to this line of questioning on the grounds that it was irrelevant and prejudicial, but was overruled. Mainiero admitted having had a relationship and sexual contact with Saliga in 1983 before he

was married but denied having had intercourse with her. During its rebuttal, the State called Saliga to testify. Again, Mainiero objected on relevance grounds to any direct testimony by Saliga. The trial court overruled Mainiero's objection and allowed Saliga's testimony for the purpose of rebutting the former babysitters' testimony regarding Mainiero's character for sexual morality.

Saliga testified that she and her husband were friends with Mainiero and his wife Sharon. Saliga stated that Mainiero had told her that he had "an open relationship" with Sharon and that "he could love more than one woman at one time." She stated that he eventually began touching her inappropriately sometime between 1984 and 1986. Specifically, she testified that on one occasion he touched her breasts when the two couples were camping, and on another occasion while at his home he undressed both of them and touched her genitals and breasts.

Mainiero argues that the trial court committed reversible error in allowing the State to cross-examine him about his prior relationship with Saliga and to introduce evidence in its rebuttal of Mainiero's bad character for sexual morality through Saliga's direct testimony.

## A. Cross-examination

We first address Mainiero's argument that the State's cross-examination regarding his relationship with Saliga was irrelevant and prejudicial. When reviewing evidentiary issues, the test is not whether this court agrees with the ruling of the trial court, but whether the trial court exercised discretion in accordance with accepted legal standards and in accordance

with the facts of record. *State v. Pharr*, 115 Wis. 2d 334, 342, 340 N.W.2d 498, 501 (1983). We will not find a misuse of discretion if there is a reasonable basis for the court's determination. *Id.* However, there should be evidence in the record to indicate that the trial court exercised its discretion and provided the basis for its discretionary determination. *Id.*

The record reveals that Mainiero's counsel requested a sidebar conference after Mainiero answered two questions regarding his relationship with Saliga. The sidebar was not transcribed, but it is apparent that the trial court overruled Mainiero's objection. Subsequently, Mainiero's counsel summarized the sidebar on the record, stating that he had objected on the grounds that such evidence was irrelevant and prejudicial and gave his reasoning. However, neither the trial court nor counsel summarized the basis for the trial court's decision to overrule the objection.[3]

Therefore, the record inadequately sets forth the trial court's reasoning for its ruling. In such cases, we independently review the record to determine whether it provides a basis for the court's exercise of discretion. *Pharr*, 115 Wis. 2d at 343, 340 N.W.2d at 502. In general, we look for reasons to sustain a trial court's discretionary ruling. *State v. Thompson*, 146 Wis. 2d 554, 559, 431 N.W.2d 716, 718 (Ct. App. 1988). We will

---

[3] We recognize that sidebar conferences and after-the-fact summations of those conferences are commonplace in some courtrooms. We caution, however, that appellate review is better served by counsel following the § 901.03(1)(a), STATS., procedure of stating objections and grounds on the record. If a matter is significant enough to invite appellate review, it is too important to subject to a remote summation procedure.

uphold a trial court's discretionary decision if the record contains facts which would support the decision had the court fully exercised its discretion. *State v. Gulrud*, 140 Wis. 2d 721, 734, 412 N.W.2d 139, 144 (Ct. App. 1987).

Mainiero first argues that his relationship with Saliga, an adult woman, was irrelevant. The proper standard for the test of relevancy on cross-examination is whether the answer sought will be useful to the trier of fact in appraising the credibility of the witness and evaluating the probative value of the direct testimony. *Rogers v. State*, 93 Wis. 2d 682, 689, 287 N.W.2d 774, 777 (1980).

On both direct and cross-examination, Mainiero was questioned about a statement he made to the complainant that he had an "open relationship" with his wife. Mainiero described the term "open" as meaning "accepting of people and caring and that sort of thing," as opposed to a "non-monogamous relationship." It was within this context that the State asked Mainiero if he had an open relationship or sexual contact or intercourse with Saliga. The trial court could have reasonably determined such questions to be directed at Mainiero's credibility regarding his description of an "open relationship." Accordingly, we conclude that the record provides a basis for the court's discretionary determination regarding the relevancy of the cross-examination.[4]

---

[4] Mainiero also states that the cross-examination regarding Saliga was unfairly prejudicial and therefore should have been excluded despite any potential relevancy. However, while Mainiero develops this argument with regard to Saliga's direct testimony, he fails to show why the cross-examination testi-

## B. *Saliga's Direct Testimony*

We next address Mainiero's argument that Saliga's direct testimony was irrelevant and unfairly prejudicial to his case. Mainiero contends that Saliga's testimony was not relevant because he never claimed total sexual fidelity to his wife, and that allegations of his sexual advances to an adult woman are totally irrelevant to the claim that he sexually molested a young girl years later. He further argues that even if Saliga's testimony passes the relevancy test, its prejudicial effect outweighed any possible probative value. *See* § 904.03, STATS. (relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice).

The trial court, in overruling Mainiero's objection, concluded that Saliga's testimony was admissible under § 904.04(1)(a), STATS., as evidence of a personality trait offered to rebut the defense's testimony from the former babysitters regarding his sexual morality. Mainiero contends that the character trait placed in issue was carefully limited to that for sexual morality in dealing with young babysitters in his home, not sexual morality in general.

We recall here that a trial court's evidentiary determinations are discretionary in nature and the relevant question is not whether this court would have permitted the testimony in question, but whether the trial court exercised its discretion in accordance with accepted legal standards and in accordance with the

mony at issue was unduly prejudicial. An issue raised but not argued is deemed abandoned. *Reiman Assocs., Inc. v. R/A Advertising, Inc.*, 102 Wis. 2d 305, 306 n.1, 306 N.W.2d 292, 294 (Ct. App. 1981).

facts of record. *Pharr*, 115 Wis. 2d at 342, 340 N.W.2d at 501. Under § 904.04(1)(a), STATS., "the State's introduction of character evidence is limited to that which rebuts the character trait being established." *State v. Brecht*, 143 Wis. 2d 297, 323, 421 N.W.2d 96, 106 (1988).

The record indicates that the court believed that Mainiero had limited the character trait at issue *to a certain extent*, but left the door open regarding his sexual morality in general:

> Clearly, [§ 904.04(1)(a), STATS.] envisions such a circumstance as we have here. I think that even though there may have been some tailoring as far as babysitting, I direct my attention to . . . [the testimony of] Mrs. Vanasse regarding her experiences in a massage that clearly have called into play, the pertinent character trait of morality of the defendant. It is a precarious situation, but certainly, one in which the defense has chosen to trod and I think the State is entitled to rebut.

Based upon our independent review of the record, we cannot conclude that the trial court misused its discretion in allowing Saliga's testimony. Prior to trial, Mainiero's counsel stated that he would offer character witnesses to testify that they believed Mainiero "to be of good character for sexual morality, decency, respect for women, those topics." It is true that counsel subsequently attempted to narrow the character trait at issue to Mainiero's sexual morality with babysitters. However, in addition to the former babysitters, Mainiero called two adult witnesses who testified that Mainiero gave them full body massages while they were almost totally unclothed without any improper

sexual behavior, which relates more to his sexual morality in general.

Regarding the relevancy of Saliga's testimony, the trial court stated:

> [B]ased on the limited offer of proof available to this court at this time, the fact that this alleged relationship [with Saliga] ended in 1987 within the same general time frame, close to a year, that [D.V.] began babysitting, that there is certainly a closeness to the time of sufficiency, in the court's estimation to meet the hurdle of relevancy.

We cannot conclude that the court misused its discretion in making this relevancy determination based on the totality of the facts and circumstances presented to the court at the time.

Further, we cannot conclude that Saliga's testimony was unfairly prejudicial. "[U]nfair prejudice results where the proffered evidence, if introduced, would have a tendency to influence the outcome by improper means or if it . . . causes a jury to base its decision on something other than the established propositions in the case." *State v. Mordica*, 168 Wis. 2d 593, 605, 484 N.W.2d 352, 357 (Ct. App. 1992). Saliga acknowledged in her testimony that Mainiero was not married during their relationship, and that their relationship was consensual except for the improper sexual conduct. Further, Saliga's testimony was balanced by Mainiero's witnesses who testified that he had never engaged in any improper sexual behavior with them. Saliga's testimony, therefore, was not of the type likely to improperly influence the jury; rather, it was simply one piece of many in the larger credibility question.

The issue is not whether this court, ruling initially on the admissibility of the evidence, would have permitted it to come in or whether we agree with the trial court's ruling. *Pharr*, 115 Wis. 2d at 342, 340 N.W.2d at 501. Rather, the question is whether appropriate discretion was exercised and there was a reasonable basis for the court's determination. *Id.* We hold that there was.

## IV. PRIOR CONSISTENT STATEMENTS EVIDENCE

We next address Mainiero's argument that the trial court improperly admitted the complainant's mother's testimony regarding the complainant's prior consistent statements concerning the alleged sexual assaults. On March 12, 1992, the complainant first revealed Mainiero's conduct to her mother and her high school social worker in the social worker's office at school. During its direct examination of the complainant's mother, the State asked: "Did your daughter then relate to you anything that had occurred to her?" Mainiero's counsel objected on hearsay grounds, and the trial court sustained the objection.

During cross-examination, Mainiero's counsel asked the complainant's mother whether the complainant ever told her that she and Mainiero had sexual intercourse, to which the mother stated "no." On redirect, the State again attempted to elicit what the complainant had told her about the alleged sexual assaults. Mainiero objected on hearsay grounds, but this time the court allowed such evidence on the grounds that the defense had "opened the door" to such testimony by asking the question concerning whether

the complainant had alleged that she had intercourse with Mainiero.

The complainant's mother testified that on March 12 her daughter told her that Mainiero had licked her breasts and touched her vagina, but that she "didn't give a whole lot of detail." She further testified that following March 12, her daughter told her that Mainiero had rubbed her body with oil while she was naked, kissed her, and fondled her breasts and vagina.

Mainiero argues that the trial court misused its discretion by allowing such testimony because a witness's prior consistent statements are generally inadmissible hearsay unless offered to rebut an express or implied charge against the declarant of recent fabrication or improper influence or motive. *See* § 908.01(4)(a)2, STATS. Mainiero points out that he did not allege that the complainant's allegations were the result of recent fabrication or improper influence or motive, and the trial court did not rely on such grounds in admitting the prior statements.

While the admissibility of evidence is generally a question addressed to the trial court's discretion, a trial court misuses its discretion if it makes an error of law. *State v. Peters*, 166 Wis. 2d 168, 175, 479 N.W.2d 198, 200 (Ct. App. 1991). We agree with Mainiero that the court erred as a matter of law in allowing the testimony regarding the complainant's prior consistent statements. However, we conclude that the error was harmless.

Mainiero's cross-examination of the complainant's mother at issue is as follows:

Q Your daughter had not told you that Lou Mainiero had had sexual intercourse with her, had she?

A No.

Q Did you ever tell anybody that it was your daughter's claim that Lou Mainiero had had sexual intercourse with her?

A Never.

Q Did you ever tell anybody that Lou Mainiero was going to be charged with first degree sexual assault because he had had sexual intercourse with your daughter?

A No.

The trial court concluded that implicit in this line of questioning was an allegation or inference that the complainant at some point had made a statement inconsistent with her testimony, and the State was therefore entitled to rehabilitate the complaint through the mother's testimony.

We cannot construe Mainiero's cross-examination as a charge of recent fabrication or improper influence or motive as necessary for the admissibility of the prior consistent statements under § 908.01(4)(a)2, STATS. Based on our review of the record, this line of questioning was aimed at the mother's credibility, not the complainant's.[5] Even if we were to construe the cross-examination as an allegation that the complainant was lying, such an allegation, standing alone, is not suffi-

---

[5] Mainiero subsequently produced a witness who testified that the complainant's mother told her that Mainiero would be charged with first-degree sexual assault because he had intercourse with her daughter.

cient to render the prior consistent statement admissible. *Peters*, 166 Wis. 2d at 177, 479 N.W.2d at 201.

> The allegation must be that the fabrication is recent or based upon an improper influence or motive. This requirement exists because the prior consistent statements must predate the alleged recent fabrication or improper influence or motive before they have probative value.

*Id.* Accordingly, because there was no express or implied charge of recent fabrication or improper influence or motive, the complainant's mother's testimony regarding the complainant's prior consistent statements was inadmissible hearsay.[6]

Although we hold that the trial court erred as a matter of law in allowing the testimony, we conclude that the error was harmless. An error is harmless if there is no reasonable possibility that the error contributed to the conviction. *State v. Dyess*, 124 Wis. 2d 525, 543, 370 N.W.2d 222, 231-32 (1985).

The outcome of this case hinged on who the jury ultimately believed—Mainiero or the complainant.

---

[6] The State concedes that this testimony would ordinarily constitute inadmissible hearsay. However, the State argues that the complainant's prior statements to her mother are admissible under the "rule of completeness" as articulated in *State v. Sharp*, 180 Wis. 2d 640, 511 N.W.2d 316 (Ct. App. 1993). That rule "require[s] that a statement be admitted in its entirety when this is necessary to explain the admitted portion, to place it in context, or to avoid misleading the trier of fact, or to ensure a fair and impartial understanding of the admitted portion." *Id.* at 653-54, 511 N.W.2d at 322 (quoted source omitted). Because no partial or incomplete statement was introduced here, we conclude that the rule is inapplicable in this case.

Mainiero argues that the admission of the complainant's prior statement to her mother "substantially bolstered the complainant's credibility." We disagree. The testimony in question was merely a brief summary of the complainant's allegations and not nearly as detailed as the complainant's direct testimony. In fact, the complainant's mother testified that her daughter did not give her many details. Therefore, we conclude that there is no reasonable possibility that the error contributed to Mainiero's sexual assault conviction.

## V. CONCLUSION

In sum, we affirm the judgments of conviction. We conclude that the trial court's in camera review of the complainant's psychiatric records was sufficient to protect Mainiero's constitutional rights to due process and a fair trial. Further, we conclude that any error resulting from the trial court's misuse of discretion in allowing the testimony complained of was harmless.

*By the Court.*—Judgments affirmed.