STATE of Wisconsin, Plaintiff-Respondent,†

v.

RICHARD A. P., Defendant-Appellant.

Court of Appeals

No. 97–2737–CR. *Oral argument November 6, 1998.—Decided December 30, 1998.*

(Also reported in 589 N.W.2d 674.)

†Petition to review denied.

On behalf of the defendant-appellant, the cause was submitted on the briefs and oral argument of *Robert R. Henak* of *Shellow, Shellow & Glynn, S. C.* of Milwaukee.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *James E. Doyle*, attorney general, and *Marguerite M. Moeller*, assistant attorney general, and oral argument by *Marguerite M. Moeller*.

Before Snyder, P.J., Brown and Nettesheim, JJ.

NETTESHEIM, J.   Richard A. P. appeals from a judgment of conviction for sexual contact with a person under thirteen years of age and intimidation of a victim contrary to §§ 948.02(1) and 940.44(1), STATS. Richard additionally appeals from the trial court order denying his motion for postconviction relief.

On appeal, Richard challenges various evidentiary rulings by the trial court.[1] Richard contends that the

---

[1] Richard additionally argues that the trial court committed reversible error by summarily disqualifying two prospective

court erred when it: (1) restricted the use of the mental health records of the victim's mother; (2) precluded other evidence of the mother's mental health history; and (3) excluded exculpatory expert testimony contending that Richard did not present the profile of a person with a sexual disorder. We conclude that the trial court properly exercised its discretion in restricting the use of the mother's mental health records and in refusing to otherwise permit evidence of her mental health history. However, we conclude that the court

---

jurors, without voir dire, solely on the basis of their probationary status and by refusing to strike for cause a prospective juror who expressed uncertainty as to whether she could give an honest judgment in the matter because she had been sexually assaulted as a child. Based on our conclusion that Richard is entitled to a new trial due to the court's erroneous exclusion of expert testimony, we need not reach these issues.

However, as to the prospective jurors who were on probation, we advise the trial court that the case of *State v. Mendoza,* 220 Wis. 2d 803, 584 N.W.2d 174 (Ct. App. 1998), is now pending before the Wisconsin Supreme Court. One of the issues in that case concerns the trial court's removal of four jurors for cause solely on the basis of their status as convicted criminals. *See id.* at 807, 584 N.W.2d at 176. The court of appeals concluded that the trial court erroneously exercised its discretion by removing the four jurors, after voir dire, solely on the basis of their status as convicted criminals. *See id.* If *Mendoza* is still pending at the time of the retrial in this case, and if similarly situated prospective jurors are on the jury panel, the trial court must abide by the court of appeals decision in *Mendoza.* And, in any event, we suggest that the trial court permit voir dire of the prospective jurors, rather than summarily disqualifying them solely on the basis of their status.

As to the juror who expressed an alleged bias, we note that the better practice is for the trial court to strike such a prospective juror. *See State v. Ferron,* 219 Wis. 2d 481, 495–96, 579 N.W.2d 654, 660 (1998).

erred in barring the expert testimony and that this ruling was not harmless error. We reverse the judgment of conviction and remand for a new trial.

## *BACKGROUND*

Richard is the husband of Joanna P. and the stepfather of Joanna's daughter, Kathleen F. The relevant facts at the jury trial revealed that on January 2, 1996, Richard and Joanna were caring for Kathleen's five-year-old son, Stephen. When Kathleen returned and picked up Stephen, he told her, as they were walking to Kathleen's car, that he and Richard had a secret. When asked about the secret, Stephen told Kathleen that he was sitting on Richard's lap under an electric blanket when Richard unzipped and put his hand in Stephen's pants and rubbed his private area. After some time passed, Richard told Stephen that he was going to walk the dog and that Stephen should continue rubbing his privates.

Richard denied touching Stephen. However, he remembered that when Stephen had come out of the bathroom he had assisted Stephen in zipping his pants. In doing so, Richard stated that he may have touched Stephen's penis but that he was not sure. Richard stated that Stephen told him he had been rubbing himself while in the bathroom. Richard told Stephen that he would not tell his mother and that it would be a secret.

On January 9, 1996, the State charged Richard with having sexual contact with a person who has not attained the age of thirteen years contrary to § 948.02(1), STATS. In the information filed on January 19, 1996, Richard was additionally charged with unlawfully attempting to knowingly and maliciously prevent or dissuade Stephen, who has been the victim

781

of a crime, from making a report contrary to § 940.44(1), Stats.

The matter proceeded to a jury trial on October 14, 1996. After a four-day trial, the jury found Richard guilty on both counts. On December 20, 1996, Richard was sentenced to ten years' probation for the sexual contact charge and two years' concurrent probation for intimidating a victim. As conditions of probation, Richard was ordered in part to spend six months in jail with work release, perform 500 hours of community service, register as a sex offender and have no contact with Stephen. The court entered a judgment of conviction on December 26, 1996.

On July 22, 1997, Richard filed an amended motion for a new trial on various grounds, including the appellate issues we have identified. The trial court denied Richard's motion. Richard renews these challenges on appeal.

## DISCUSSION

### Kathleen's Mental Health History[2]

Richard presents two claims regarding Kathleen's mental health history. He contends that the trial court erred when it restricted the use of Kathleen's mental health records and precluded any further evidence of

---

[2] Although we conclude that Richard is entitled to a new trial based on the trial court's erroneous exclusion of expert testimony, we nevertheless address his arguments pertaining to Kathleen's mental health records and history. *See State ex rel. Jackson v. Coffey*, 18 Wis. 2d 529, 533, 118 N.W.2d 939, 942 (1963) (issues briefed may be considered if they are likely to recur on remand even though other issues are dispositive of the appeal).

her mental health history. We address these issues in separate discussions.

### 1. Kathleen's Mental Health Records

In a pretrial discovery motion, Richard moved for an order compelling the State to produce all records relating to any psychiatric, psychological or other mental health records of Kathleen, whom the State had identified as a witness. Pursuant to *Pennsylvania v. Ritchie*, 480 U.S. 39 (1987), Richard requested that the court conduct an in camera inspection of the records to determine whether any portions of those records should be admitted at trial for purposes of examining and challenging Kathleen's credibility as a witness and her ability to perceive events and accurately report them.

At the hearing on the motion, Joanna testified that Kathleen has had psychological problems for most of her life and that the problems had worsened since Kathleen's last marriage to a man who was convicted of molesting her eldest child. At that point, Kathleen attempted suicide. According to Joanna, Kathleen was diagnosed with a multiple personality disorder, has received social security disability as a result of her mental illness, and has been hospitalized. Joanna testified that Kathleen is "very, very paranoid when it comes to anything sexual" and has problems being truthful and relating past events accurately.

The trial court found the testimony to show "more than a mere possibility that [Kathleen] might be unable to perceive reality." Given that finding, the court directed the State to produce Kathleen's mental health records for in camera inspection. With respect to its review, the court stated:

783

I will be looking at these records myself . . . with the idea of determining if there is any medical confirmation that she is unable to perceive reality. And I'll test that by either medical opinions to that effect or information in the medical records that indicate that she has falsely given information, and then the medical records confirm that the information was false and there is a suggestion that it was false because she did not understand . . . the difference between truth and falseness.

If I don't find any of that, then I will conclude that there is no exculpatory evidence . . . and will not reveal any portion of it. If I do find that, then I will convene both parties to talk about what I find and even let them look at it independently.

At the opening of the jury trial, the trial court reported the results of its in camera inspection of the records. The court stated that it would permit the parties to use the following information as evidence if they saw fit: (1) that Kathleen was the victim of childhood sexual abuse perpetrated by family members and others; (2) that Kathleen was physically and verbally abused by her mother during her childhood; (3) that two weeks prior to the alleged offense Kathleen had called her mother to tell her that she wanted her parents to suffer; and (4) that Kathleen had expressed anger about her parents' unjust behavior.[3]

Richard contends that the trial court's ruling deprived him of his rights to confrontation and due

---

[3] Based upon our independent review of Kathleen's mental health records and the social worker's notations therein, it appears that the latter two categories were based upon statements which may not pertain to Kathleen, but rather to two other members of Kathleen's therapy group. Upon remand, the trial court should clarify this matter.

process and his right to present a defense.[4] When the trial court conducts an in camera inspection, it determines whether the records contain information that is material to the defense of the accused. *See Ritchie*, 480 U.S. at 58–60. Before we can review the trial court's determination of materiality, we must also conduct an independent review of Kathleen's sealed mental health records. *See State v. Darcy N. K.*, 218 Wis. 2d 640, 655, 581 N.W.2d 567, 574 (Ct. App. 1998). We have done so in this case.

However, our review of a trial court's materiality determination is measured from the standpoint of the result of the proceedings in the trial court. "[E]vidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome." *State v. Mainiero*, 189 Wis. 2d 80, 88, 525 N.W.2d 304, 307 (Ct. App. 1994) (quoting *Ritchie*, 480 U.S. at 57). Thus, while materiality is the core issue both in the trial court and on appellate review, the trial and appellate court decisions are measured from markedly different circumstances. The trial court looks forward and determines whether the records are material to a case yet to be tried. The appellate court looks backward and determines whether the records would have had a probable bearing on the outcome of the trial.

---

[4] Richard also complains that the trial court applied too restrictive a test when it stated that it would look for information indicating that Kathleen had a motive to lie, that she was unable to perceive reality and that she could not understand the difference between truth and falsity. Regardless, the court's actual release of certain information in the records reveals that it did not adhere to this restrictive test.

Having recited the test which we apply, we next look to our standard of review. The parties agree that the case law on this question is in some conflict and turmoil. Relying on the supreme court's decision in *State v. Solberg*, 211 Wis. 2d 372, 564 N.W.2d 775 (1997), this court in *Darcy N. K.* stated that a materiality review presented a mixed fact and discretion question; the former is reviewed under the clearly erroneous standard and the latter is reviewed under the misuse of discretion standard. *See Darcy N. K.*, 218 Wis. 2d at 655, 581 N.W.2d at 574. Yet, in the earlier case, *Mainiero*, this court stated that the issue presented a mixed fact and law question. *See Mainiero*, 189 Wis. 2d at 88, 525 N.W.2d at 307. We reviewed the former under the clearly erroneous standard and the latter as a de novo question of law. *See id.*

> [E]vidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome. Findings of fact made by a trial court in determining whether information in the records is material are reviewed under the clearly erroneous standard. However, to ensure consistency in the scope of constitutional protections, we independently apply the constitutional principles involved to the facts as found by the trial court.

*Id.* (citations omitted). This statement was based, in part, on an earlier decision of the court of appeals, *State v. Shiffra*, 175 Wis. 2d 600, 605, 499 N.W.2d 719, 721 (Ct. App. 1993).

The State argues for the *Mainiero/Shiffra* standard of review. However, we are duty bound to follow decisions of our supreme court and therefore we will

abide by the *Solberg* decision in this case. However, we briefly state why we think the *Mainiero/Shiffra* "fact/law" standard is correct and why the *Solberg* "fact/discretion" standard is incorrect. A trial court's materiality decision presents two levels of inquiry: first, a fact-finding inquiry which determines what the records actually contain; and a second inquiry which determines whether the records, or any portion of them, contain relevant evidence which can be admitted at the trial. Therefore, we agree with the supreme court that a materiality determination has a fact-finding component which is governed by the clearly erroneous standard. And we also agree with the supreme court that, generally, decisions as to the admissibility of evidence are committed to the trial court's discretion.

However, *Ritchie* is a decision which rests on constitutional principles of due process. *See Ritchie*, 480 U.S. at 56. Thus, in *Shiffra* we viewed the second level of the inquiry as presenting a de novo constitutional question of law. *See Shiffra*, 175 Wis. 2d at 605, 499 N.W.2d at 721.[5] The supreme court has also recognized that constitutional issues present questions of law which are reviewed de novo. *See, e.g., State v. Migliorino*, 150 Wis. 2d 513, 524, 442 N.W.2d 36, 41 (1989). Thus, although we are obligated to follow *Solberg*, we question whether this constitutional issue is properly

---

[5] Ironically, in *State v. Solberg*, 211 Wis. 2d 372, 386, 564 N.W.2d 775, 781 (1997), the supreme court cited to *State v. Shiffra*, 175 Wis. 2d 600, 499 N.W.2d 719 (Ct. App. 1993), in support of its standard of review, but only as to the "clearly erroneous" portion of the inquiry.

reviewed under the erroneous exercise of discretion standard.[6]

With our standard of review in place, we address the issue on its merits. Richard argues that the trial court applied too restrictive a test when it conducted its in camera inspection. As we have noted, the court said that it would examine the records to see if they contained information reflecting Kathleen's motive to lie and her ability to perceive reality such that she was unable to differentiate between truth and falsity. Richard contends that the court should have applied § 904.01, STATS., which defines "relevant evidence." Thus, he argues that the court should have inquired whether the records contained information that had "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." *Id.*

Assuming that Richard is correct that § 904.01, STATS., represents the correct standard for the trial court to apply when inspecting mental health records in camera, he fails to appreciate what we have already noted—that the test for materiality which we apply on appeal is different from that applied in the trial court. As we have stated, *Ritchie* requires that we look to see whether the undisclosed records reveal information

---

[6] Despite *Solberg*, we have considered whether we are nonetheless permitted to analyze the issue as one of constitutional law under a de novo approach because decisions of the United States Supreme Court on federal questions are binding on state courts. *See State v. Mechtel*, 176 Wis. 2d 87, 94, 499 N.W.2d 662, 666 (1993). However, we conclude that while the ultimate question of materiality is a federal constitutional issue, the applicable standard of review is a separate question of state law.

sufficient to undermine our confidence in the outcome of the trial.

As noted, we have independently reviewed Kathleen's mental health records. Because these are confidential, we are necessarily limited as to what we can say about them in this public opinion. But we confidently state that the material that the trial court did release represents the only information that could have had any conceivable effect upon the outcome of this case. Although we reverse Richard's conviction on other grounds, we have absolutely no lack of confidence in the outcome of this case *as to this issue.*

### 2. Preclusion of Kathleen's Other Mental Health History

Following the trial court's ruling with respect to Kathleen's mental health records, the State asked the court to preclude any other references to Kathleen's mental health history at trial, particularly during her cross-examination. Richard contends that the court erroneously granted the State's request.

The decision to exclude evidence lies within the sound discretion of the trial court. *See State v. Evans,* 187 Wis. 2d 66, 77, 522 N.W.2d 554, 557 (Ct. App. 1994). The extent and scope of cross-examination for impeachment purposes is similarly committed to the trial court's discretion. *See State v. McCall,* 202 Wis. 2d 29, 35, 549 N.W.2d 418, 420 (1996).

Richard relies upon our supreme court's holding in *Sturdevant v. State,* 49 Wis. 2d 142, 147, 181 N.W.2d 523, 526 (1970), that "[w]itnesses may be questioned regarding their mental or physical condition where such matters have bearing on their credibility." How-

ever, the court went on to state that "mere mental impairment, without more, is not sufficient to affect credibility." *Id.* at 148, 181 N.W.2d at 526 (quoted source omitted). Therefore, the fact that Kathleen suffered from depression and had been diagnosed with a multiple personality disorder does not render such information admissible unless there is evidence that these disorders affected her ability to recall events. *See id.* ("[E]vidence that a witness was subject to epilepsy does not warrant disregarding his testimony in the absence of a showing as to what effect epilepsy has on the memory.") (quoted source omitted). Here, there was no such evidence.

We bear in mind that, when making its ruling, the trial court already had the benefit of its prior inspection of Kathleen's mental health records. The court found nothing in those records to indicate that Kathleen's history of mental illness affected her ability to accurately recall and relate events. Based upon our independent review of these records, we fully agree.[7]

We conclude that the trial court appropriately exercised its discretion in limiting the evidence of Kathleen's mental health history to only those materials that the court disclosed following its examination of the mental health records.

### Exclusion of Expert Testimony

Prior to trial, Richard filed a motion in limine requesting that he be permitted to introduce evidence

---

[7] We note that the trial court permitted cross-examination as to possible motives for Kathleen to fabricate the alleged facts relating to the event. For example, the defense was permitted to inquire as to Kathleen's dislike for Richard and his marriage to her mother.

of his character through the testimony of Dr. Charles M. Lodl, a psychologist who had evaluated Richard and concluded that "[Richard's] sexual history and his responses to specific testing about his sexual behavior did not show any evidence of any diagnosable sexual disorder." Lodl would additionally testify that absent a diagnosable disorder, it is unlikely that such a person would molest a child.

The trial court ruled that Lodl's testimony would be admitted only if Lodl could testify that "if [Richard] sexually assaulted this child, he would have a diagnosable disorder." Because Lodl could not testify to that degree of certainty, the court excluded the testimony.

■

"Expert testimony is admissible only if it is relevant," *State v. Pittman*, 174 Wis. 2d 255, 267, 496 N.W.2d 74, 79 (1993), and if it will assist the trier of fact to understand the evidence or to determine a fact in issue, *see* § 907.02, STATS.[8] Whether expert evidence is relevant and whether the evidence will assist the trier of fact are discretionary decisions. *See State v. Ross*, 203 Wis. 2d 66, 80, 552 N.W.2d 428, 434 (Ct. App. 1996). We affirm a trial court's discretionary ruling if it is supported by a logical rationale, is based on facts of record and involves no error of law. *See Shawn B. N. v. State*, 173 Wis. 2d 343, 367, 497 N.W.2d 141, 149 (Ct. App. 1992).

---

[8] Section 907.02, STATS., provides the general rule governing the admissibility of expert testimony:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

The admissibility of expert opinion testimony as to a defendant's character for sexual deviance is an open question in Wisconsin. Section 904.01, STATS., defines "relevant evidence" as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." The State concedes on appeal that "the trial court was wrong in concluding that Dr. Lodl's testimony was not relevant because [he] could not say that the absence of a diagnosable sexual disorder made it impossible for the defendant to have committed the charged crime." Nonetheless, the State contends that the testimony was not admissible character evidence. Alternatively, the State contends that any error was harmless.

We disagree with the State. Lodl's testimony would have assisted the jury in determining the likelihood that Richard committed the charged offense. We have already noted the sharp conflict between the incriminating testimony presented by Stephen and the exculpatory testimony presented by Richard. There were no neutral eyewitnesses. Lodl was prepared to testify that the results of certain psychological evaluations did not show any evidence that Richard has a sexual disorder. In Lodl's expert opinion, it is unlikely that someone without a sexual disorder would assault a child. Lodl's testimony may well have assisted the jury in determining whether Richard, who maintained that the child had misinterpreted his actions, committed the charged offense. Lodl's expert testimony was admissible under § 907.02, STATS.

Moreover, the evidentiary code expressly recognizes a defendant's right to present evidence of a pertinent character trait. Section 904.04(1)(a), STATS.,

which governs the admissibility of character evidence, provides:

> **Character evidence not admissible to prove conduct; exceptions; other crimes.** (1) CHARACTER EVIDENCE GENERALLY. Evidence of a person's character or a trait of the person's character is not admissible for the purpose of proving that the person acted in conformity therewith on a particular occasion, except:
>
> (a) *Character of accused*. Evidence of a pertinent trait of the accused's character offered by an accused, or by the prosecution to rebut the same . . . .

Such character evidence may be presented through testimony as to reputation or by testimony in the form of an opinion. *See* § 904.05, STATS. Any testimony presented is then subject to cross-examination. *See id.*

Although no Wisconsin case has expressly addressed the admissibility of the specific kind of character evidence at issue in this case, certain other case law offers guidance for our decision and support for our conclusion. In *King v. State*, 75 Wis. 2d 26, 248 N.W.2d 458 (1977), the defendant was convicted of first-degree murder. At trial, he offered the expert testimony of a psychologist that the act of murder was not consistent with his passive-aggressive personality. *See id.* at 38, 248 N.W.2d at 464. Although the admission of the expert testimony was not challenged on appeal, the supreme court stated:

> In offering the expert testimony of the psychologist, as it related to the defendant's character, the defendant was properly relying upon the provisions of sec. 904.04(1)(a), STATS., and sec. 904.05(1). . . . Thus in this first-degree murder case, the defendant was entitled to place into evidence not only opinion testimony but expert opinion testimony

concerning his general character trait of nonhostility and nonagressiveness.

*Id.* at 38–39, 248 N.W.2d at 464–65.

In *State v. Pulizzano*, 155 Wis. 2d 633, 657–58, 456 N.W.2d 325, 335–36 (1990), the State argued to the jury, without supporting expert testimony, that the defendant was more likely to sexually assault a child because she had been sexually abused herself. Our supreme court held that the "battering parent syndrome" raised by the prosecutor was outside the common knowledge of the jury and thus the prosecutor's argument was improper because it was unsupported by expert testimony. *See id.* While not required to expressly decide the admissibility of such evidence, the court's words come perilously close to making such a declaration: "[T]he courts have been uniform that [evidence of the battering parent syndrome] must be supported by expert testimony, both with respect to the theory itself and whether the defendant exhibits character traits consistent with that profile." *Id.* at 658, 456 N.W.2d at 336.

*King* and *Pulizzano* demonstrate that arguments or evidence about character profile, which seek to explain conduct or the absence of it, must be supported by competent underlying expert testimony. Indeed, expert testimony is often used by the State to inform jurors of the behavior profiles of other similarly situated victims in order to illustrate that the victim in the particular case has acted in conformity with that profile. *See, e.g., State v. Bednarz*, 179 Wis. 2d 460, 467, 507 N.W.2d 168, 171–72 (Ct. App. 1993) (expert opinion admissible regarding battered women's syndrome and the victim's recantation because it met the requirements of § 907.02, STATS.); *State v. Maday*, 179 Wis. 2d 346, 357, 507 N.W.2d 365, 371 (Ct. App. 1993) (State

proposed to introduce the testimony of five experts that the child victims' behaviors were consistent with the behaviors of other victims of sexual abuse).[9]

Here, Richard sought the admission of expert testimony to demonstrate that he does not exhibit character traits consistent with a sexual disorder such as pedophilia. This evidence was relevant and admissible under § 907.02, STATS., the general rule governing expert testimony, operating in tandem with § 904.04(1)(a), STATS., the specific statute governing character evidence. We therefore conclude that the trial court erred by excluding Lodl's testimony.

The State contends that any error made by the trial court in excluding Lodl's testimony was harmless because the jury received essentially the same information through the testimony of Dr. Jon Carlson, another psychologist. The test for harmless error is "whether there is a reasonable possibility that the error contributed to the conviction." *State v. Dyess*, 124 Wis. 2d 525, 543, 370 N.W.2d 222, 231–32 (1985).

However, Carlson was permitted to testify only as a lay witness. This came about because Richard, although identifying Lodl as an expert witness on his witness list, had failed to identify Carlson as an expert

---

[9] At oral argument, the State argued that if we accepted Richard's position, then the State also would have the right to use character profile evidence as part of its case-in-chief. We disagree. Section 904.04(1)(a), STATS., instructs that character evidence about the accused may only be offered by the accused. Only in that situation may the State, by way of rebuttal evidence, introduce countervailing evidence. Thus, any risk associated with the presentation of character evidence by the State is triggered by the defendant.

witness. Therefore, the trial court limited Carlson's testimony to his familiarity with Richard and his lay opinion as to Richard's character. Carlson testified that he is a psychologist and that he had known Richard for approximately ten months during which he had seen Richard approximately twelve times. As to Richard's character, Carlson testified as follows:

> [Defense Counsel]: Do you have an opinion concerning [Richard's] character traits for sexual deviancy with children?
>
> [Carlson]: I do.
>
> [Defense Counsel]: What is that opinion?
>
> [Carlson]: I do not believe that he has the characteristics that sexual abusers, pedophiles, have.

The State concedes that Carlson was not identified as an expert. However, it contends that the jury was not instructed that Carlson was testifying as a layperson, and therefore the jury might well have assumed that Carlson, identified on the stand as a psychologist, was an expert. The State additionally argues:

> The only difference the state can conceive of is that Dr. Lodl would have been asked about the various tests he administered to the defendant, whereas Dr. Carlson was not asked such questions since he was testifying as a layperson.

However, in its closing arguments, the State denigrated the significance of Carlson's testimony and drew the jury's particular attention to his lay status:

> Although, Jon Carlson is a psychologist, he was not presented as an expert witness. He was presented as a lay witness. . . . And the point is, how

really reliable [are] . . . lay witness insights into whether or not a person . . . is a pedophile?

How does a lay person find out if someone has a sexual interest in children?

■

In light of this record, we hold Carlson's lay testimony does not stand as a sufficient substitute for Lodl's expert testimony. Thus, there exists a reasonable probability that the exclusion of Lodl's testimony contributed to Richard's conviction. *See id.* at 543, 370 N.W.2d at 231–32.

We therefore reverse the judgment of conviction and remand for a new trial.

## *CONCLUSION*

We conclude that the trial court's assessment of the materiality of Kathleen's mental health records was not clearly erroneous and that the court's further determination as to the limited admissibility of those records was not a misuse of the court's discretion. We also uphold the court's discretionary ruling barring the use of other evidence concerning Kathleen's mental health history. However, we conclude that the court erred by excluding the expert testimony of Lodl and that such error was not harmless. We reverse the judgment of conviction and remand for a new trial.

*By the Court.*—Judgment and order reversed and cause remanded.