BRASH, J.
¶ 1 Akim A. Brown appeals his judgment of conviction for second-degree sexual assault, pursuant to a jury's verdict, and an order denying his postconviction motion asserting ineffective assistance of counsel.[1] Specifically, Brown claims that his trial counsel failed to present and develop testimony from Brown that he contends would have demonstrated that the encounter was consensual. Brown further asserts that his trial counsel should have objected to the testimony of the police officer who interviewed the victim on the grounds that it was a prior consistent statement of the victim and was thus inadmissible hearsay. We affirm.
BACKGROUND
¶ 2 The charge against Brown stems from an incident that occurred just after midnight on Monday, November 25, 2013. Brown had met L.S., the victim, over the weekend at the home of mutual friends who reside in Green Bay.
¶ 3 On Sunday night, Brown gave L.S. a ride back to her home in Milwaukee from Green Bay. They arrived at her residence around midnight. L.S. told police that Brown had requested to use her bathroom once they arrived at her residence. L.S. claimed that after he was done using the bathroom, Brown would not leave her residence, even though L.S. repeatedly requested that he leave. She stated that he then pulled her by her shirt collar onto her bed and pulled down her sweatpants. She repeatedly told him "no," but he held her down and engaged in penis-to-vagina intercourse with her.
¶ 4 L.S. stated that after the assault, she immediately got up and took a shower. Brown took a shower after L.S. L.S. then pretended to be asleep, and Brown left her residence and drove to his home in Kenosha.
¶ 5 L.S. reported the incident to Milwaukee police on Wednesday, November 27, 2013. Brown was arrested; in his custodial interview with police, he asserted that it was a consensual sexual encounter. In fact, Brown stated that at one point while they were having sex, L.S. had stimulated herself.
¶ 6 The matter went to trial in March 2014. L.S.'s testimony was consistent with the statement she gave to police on November 27. She further testified that on Monday morning before work, she had called her friend in Green Bay with whom she had been staying when she met Brown, and told her what had happened. L.S. also told her supervisor at work about the assault on that Monday. L.S. further stated that she stopped at an urgent care center on that Monday on her way home from work, but that she did not stay for treatment because she was embarrassed and scared.
¶ 7 L.S. admitted that she did not scream during the assault. She explained that she did not know if the people in the neighboring apartments were home, so she did not think anyone would hear her. She also admitted that she did not leave the apartment or call the police when Brown got into the shower after the assault.
¶ 8 The police officer who interviewed L.S. also testified. She summarized the statement L.S. gave when she reported the incident, which was consistent with L.S.'s trial testimony. The officer described L.S. as being "very emotional" during the interview, stating that "[s]he cried quite a bit[.]"
¶ 9 L.S.'s friend from Green Bay, Elizabeth Simmons, testified as well. She stated that L.S. called her the morning after the assault and told her "I think I was taken advantage of[.]" Simmons testified that L.S. began crying while she explained to Simmons what had occurred. Simmons's testimony regarding the incident as told to her by L.S. was consistent with the information L.S. reported to police. L.S. also told Simmons that her vagina hurt after the incident. Simmons stated that L.S.'s demeanor during this conversation was sad and scared.
¶ 10 Brown testified in his defense. The defense's theory was that L.S. had consented to having intercourse with Brown, but later regretted that decision and then falsely accused him of sexual assault. Brown testified that he and L.S. had been "playful[ly] flirt[ing]" during conversations over the weekend in Green Bay. Brown also stated that L.S. had told him while they were driving to Milwaukee that she had "checked [him] out" on the internet and looked at his Facebook page. Furthermore, Brown said that he had not requested to use L.S.'s bathroom that night; on the contrary, he stated that he and L.S. had discussed Brown spending the night at L.S.'s house during the ride to Milwaukee.
¶ 11 Additionally, Brown provided a detailed description of the sexual encounter. For example, Brown stated that L.S. had changed her clothes, put lotion on her body, and joined him in her bed where he was watching a movie. He further indicated that as sexual intercourse commenced, L.S. had her hands on the sides of his torso as Brown kissed her, and that her legs were wrapped around his hips. Brown maintained that he did not force himself on L.S. or hold her down. Brown also stated that L.S. never told him "no" or to stop, nor did she resist or struggle while they were having sex.
¶ 12 During jury deliberations, the jury asked to view the testimony of both Brown and L.S., specifically the testimony relating to the sex act. The trial court directed the court reporter-upon agreement by the parties-to read back to the jury the direct testimony of Brown and L.S. from the time that they entered L.S.'s residence to the time that Brown took a shower.
¶ 13 The jury found Brown guilty of second-degree sexual assault. Brown was sentenced to twelve years of initial confinement and eight years of extended supervision.
¶ 14 Brown filed a motion for postconviction relief in November 2015,[2] claiming that Brown had received ineffective assistance of counsel on two grounds. First, Brown argued that his trial counsel had failed to elicit his testimony that L.S. had stimulated herself while they were having sexual intercourse, which would have helped to establish that it was consensual. Brown further claimed that his trial counsel failed to object to the testimony of Simmons and the police officer who interviewed L.S., both of whom repeated L.S.'s statements regarding the details of the assault. He asserted that counsel should have objected to that testimony on the grounds that they were prior consistent statements and thus inadmissible hearsay, and further, that their admission prejudiced Brown because it bolstered L.S.'s credibility. Brown therefore requested a Machner[3] hearing relating to his ineffective assistance claim, and a new trial in the interests of justice.
¶ 15 The postconviction court held a Machner hearing beginning in April 2016 and continuing in August and September 2016. In evaluating Brown's claims, the court noted that the relationship between Brown and his trial counsel "was not the best" due to a "divergence with respect to trial strategy[.]" Indeed, Brown's trial counsel testified at the Machner hearing that Brown consistently tried to "control the conversation" when they were discussing trial strategy, that it was difficult to keep Brown focused on the purpose for which they were meeting, and that with regard to Brown's account of the incident, at certain points "there seemed to be new details every time the defendant opened his mouth[.]" Additionally, trial counsel admitted that he did not have a strategic reason for not objecting to the testimony containing prior consistent statements.
¶ 16 Ultimately, the postconviction court determined that trial counsel's performance did not fall below the level of reasonable representation to the extent that Brown was prejudiced "even though there were many things about [trial counsel's] performance that he even recognizes could have been done differently[.]" The court noted that "[t]he Sixth Amendment guarantees reasonable competence, not perfect advocacy judged with the benefit of hindsight." Thus, the court denied Brown's postconviction motion. This appeal follows.
DISCUSSION
¶ 17 Brown's appeal reiterates his claim of ineffective assistance of counsel and request for a new trial. "Wisconsin applies the two-part test described in Strickland [v. Washington ] for evaluating claims of ineffective assistance of counsel." State v. Roberson , 2006 WI 80, ¶ 28, 292 Wis. 2d 280, 717 N.W.2d 111 (internal citation omitted). That test requires that a defendant show that his trial counsel's performance was deficient and that the deficiency prejudiced the defense. Strickland v. Washington , 466 U.S. 668, 687 (1984).
¶ 18 "To prove constitutional deficiency, the defendant must establish that counsel's conduct falls below an objective standard of reasonableness." State v. Love , 2005 WI 116, ¶ 30, 284 Wis. 2d 111, 700 N.W.2d 62. "To prove constitutional prejudice, the defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. (citations and internal quotation marks omitted). If a defendant fails to satisfy one component of the analysis, a court need not address the other. Strickland , 466 U.S at 697.
¶ 19 Our standard of review for ineffective assistance of counsel claims presents "a mixed question of law and fact." See State v. Johnson , 153 Wis. 2d 121, 127, 449 N.W.2d 845 (1990). The findings of fact made by the circuit court, " 'the underlying findings of what happened,' will not be overturned unless clearly erroneous." Id. (citation omitted). However, "[t]he ultimate determination of whether counsel's performance was deficient and prejudicial to the defense are questions of law which this court reviews independently." Id. at 128.
¶ 20 The central issue in this case is whether the sexual intercourse between Brown and L.S. was consensual. Because only those two were present at the time of the incident, the postconviction court recognized that "this case came down to essentially one of credibility-judging the credibility of the defendant, Mr. Brown, against the credibility of the victim in this matter[.]" Brown maintains that had his trial counsel not committed the alleged errors, there is a reasonable probability that the jury would have reached a different verdict.
¶ 21 The postconviction court acknowledged that Brown's trial counsel made some errors during the course of the trial. However, the court noted there is a strong presumption that counsel's performance was within the range of "reasonable professional assistance," which Brown had to overcome in order to prevail on his claim of ineffective assistance. See Strickland , 466 U.S. at 689. The postconviction court further pointed out that deficient performance is not proven "simply by demonstrating that counsel was not perfect[.]" See State v. Thiel , 2003 WI 111, ¶ 61, 264 Wis. 2d 571, 665 N.W.2d 305 ("The Sixth Amendment does not demand perfection.").
¶ 22 In our review of the record, the evidence relating to L.S.'s alleged self-stimulation during intercourse is certainly relevant to the primary issue in this case. However, we also note that Brown's testimony about the incident was very detailed and included other information that suggested that the intercourse was consensual, such as the alleged flirting that had occurred during the weekend, making plans during the drive from Green Bay for Brown to spend the night at L.S.'s residence, and L.S.'s actions once they were at her residence. Nevertheless, the jury believed L.S.'s version of the incident.
¶ 23 As a result, even if we assume that trial counsel's error constituted deficient performance, Brown's claim fails. Brown has not demonstrated that the verdict would have been different had the jury heard testimony about L.S.'s alleged self-stimulation in addition to the substantial testimony given by Brown that suggested L.S. had consented to having sexual intercourse. In fact, the jury heard that testimony twice-first, during his direct examination during the trial, and second, during deliberations when the court reporter read that testimony back in response to the jury's request. Therefore, Brown has not established that he was prejudiced by the error. See Strickland , 466 U.S at 697.
¶ 24 Next, we turn to Brown's argument relating to his trial counsel's failure to object to L.S.'s prior consistent statements that were included in the interviewing police officer's testimony.[4] Brown argues that he was prejudiced by this inadmissible testimony because it "inappropriately tipped the scales in favor of L.S.'s credibility and undercut ... Brown's credibility and fabrication defense."
¶ 25 The State argues that the prior consistent statements included in the officer's testimony were not hearsay pursuant to WIS. STAT. § 908.01(4)(a)2. (2015-16)[5] because they rebutted an improper motive; that is, Brown's claim that L.S. fabricated her story. However, the prior consistent statement " 'must predate the alleged recent fabrication or improper influence or motive before [it has] probative value.' " State v. Mainiero , 189 Wis. 2d 80, 103, 525 N.W.2d 304 (Ct. App. 1994) (citation omitted). Put another way, an allegation that a complainant is lying during cross-examination "is not sufficient to render the prior consistent statement admissible." Id. at 102-03. Such is the case here, where the police officer's trial testimony does not predate L.S.'s initial statement to police-the source of the prior consistent statement.
¶ 26 Thus, the officer's testimony likely was not admissible. Although it could thus be deemed a deficiency on the part of trial counsel for not objecting to that testimony, Brown again has not met the prejudice prong of the Strickland analysis. "[I]n most cases errors, even unreasonable errors [by counsel], will not have a cumulative impact sufficient to undermine confidence in the outcome of the trial, especially if the evidence against the defendant remains compelling." Thiel , 264 Wis. 2d 571, ¶ 61. As stated above, Brown provided an abundance of details regarding the night of the incident, many of which suggest that L.S. was a willing participant in their sexual encounter. However, the jury still found L.S. to be more credible than Brown.
¶ 27 Furthermore, the police officer's testimony of L.S.'s prior consistent statements also included facts that support Brown's defense. For example, the officer testified that L.S. admitted to her that she did not scream for help during the assault, leave her residence while Brown was in the shower, or immediately call the police after the assault. These prior consistent statements, made by L.S. and repeated by the officer, were also heard by the jury. Still, the jury convicted Brown.
¶ 28 In short, Brown has failed to prove the prejudice prong of the Strickland analysis, and thus his ineffective assistance claim fails. See id. , 466 U.S at 697. We therefore affirm Brown's judgment of conviction and the order denying his postconviction motion.
By the Court. -Judgment and order affirmed.
Not recommended for publication in the official reports.

Brown's trial was before the Honorable Daniel L. Konkol, which we refer to as the trial court; the postconviction motion was heard by the Honorable M. Joseph Donald, and will be referred to as the postconviction court.

There were several requests by Brown for extensions to the filing deadline for his postconviction motion, all of which were granted by this court.

State v. Machner , 92 Wis. 2d 797, 285 N.W.2d 905 (Ct. App. 1979).

In his postconviction motion, Brown included the testimony of Simmons in his argument relating to prior consistent statements; however, he does not include Simmons's testimony in his argument on appeal.

All references to the Wisconsin Statutes are to the 2015-16 version, unless otherwise noted.