In the
United States Court of Appeals
For the Seventh Circuit

No. 01-3840

Leonard L. Davis,

Petitioner-Appellant,

v.

Jon E. Litscher, Secretary,

Respondent-Appellee.

Appeal from the United States District Court
for the Western District of Wisconsin.
No. 01-C-245-C--Barbara B. Crabb, Chief Judge.

Argued February 20, 2002--Decided May 21, 2002

Before Bauer, Ripple and Manion, Circuit Judges.

Bauer, Circuit Judge. Petitioner Leonard Davis was convicted in 1998 in a Wisconsin state court of first degreesexual assault, second degree sexual assault, battery and threats to injure, and he was sentenced to 42 years in prison. Davis unsuccessfully challenged his conviction in a direct appeal, arguing that his due process rights were violated when the trial court denied his motion for an in camera inspection of the victim's mental health records. Subsequently, a federal district court denied Davis' petition for a writ of habeas corpus. For the reasons set forth below, we find that Davis' conviction was not the result of any constitutional violation and we affirm the decision of the district court to deny the writ.

I. BACKGROUND

On November 12, 1997, the State of Wisconsin charged Leonard Davis with sexually assaulting and beating his girlfriend, Melodee Vance. The state alleged that on October 17, 1997, Davis and Vance consumed alcohol and smoked crack with several other guests at Davis' apartment. When the other guests left and Davis' roommate went to his bedroom, Davis beat Vance, threatened her with a

knife, undressed her and had non-consensual sexual intercourse with her in his living room.

Prior to trial, Davis filed a motion for an in camera inspection of all Vance's mental health records that were in the possession of various state agencies, including treatment records for drugs and alcohol abuse, as well as records of therapist meetings that were a requirement of Vance's parole. Davis argued to the trial court that he had reason to believe that the records contained evidence indicating that certain factors may have impaired Vance's ability to perceive and relate events as they truly happened. In particular, Davis asserted that Vance was an admitted drug addict who had repeatedly received treatment for her addiction. Davis also stated that Vance had a thyroid condition that she neglected to treat properly and was using a prescription anti-depressant at the time of the assault. In addition, Davis noted that Vance once told a detective that "she had seen men around her apartment that are not here," and she admitted to using cocaine and alcohol on the night of the assault. After holding a hearing on the issue, the trial court found that Davis failed to make an adequate showing of materiality of the sought-after records and denied the motion.

At Davis' trial, Vance testified for the prosecution and on cross-examination, she admitted that she did not remember some of the events from the night of the alleged attack, that she had a bad memory and that she had been using drugs and alcohol throughout the night that further impaired her ability to recall the events. Vance had previously testified (at a preliminary hearing) that she did not regularly take her thyroid medication or her anti-depressants, although this was not addressed during her testimony at trial. At the conclusion of the trial, Davis was convicted and sentenced to 42 years in prison.

On direct appeal, Davis argued that the trial court erred in denying his pretrial request for an in camera inspection of Vance's mental health records. The Wisconsin appellate court affirmed Davis' conviction, finding that Davis' request lacked specificity and failed to show

that the records are "relevant and may be necessary to a fair determination of guilt or innocence." State of Wisconsin v. Davis, 232 Wis.2d 557, 608 N.W.2d 437 (1999). In particular, the court reasoned that Davis did not adequately explain the usefulness of the records since he never alleged that the records showed evidence of a delusional illness or confused reality on Vance's part. In addition, the court noted that Davis was permitted at trial to cross-examine Vance about any use of stimulants or her misuse of other medication. The Wisconsin Supreme Court denied Davis' request for review.

Subsequently, Davis petitioned the federal district court for a writ of habeas corpus on the grounds that the state appellate court violated his right to due process when it refused to order the in camera inspection of Vance's mental health records. A magistrate judge recommended that the district court deny the petition because the Wisconsin court had not unreasonably applied federal law. The magistrate noted that Davis "did not allege that [the victim] suffered from any sort of pre-existing mental impairment that caused delusions or affected her ability to perceive or describe reality." The magistrate also determined that "the court of appeals concluded that the petitioner alreadypossessed the facts material to impeaching the victim" so that "it was not unreasonable for the court to conclude that [Davis] had failed to show that an in camera review would be material." The district court adopted the magistrate's recommendation and denied Davis' petition. This appeal followed.

II.   DISCUSSION

Federal courts may grant habeas corpus when a person is held in custody under a state court judgment in violation of the United States Constitution. 28 U.S.C. sec. 2254; Lowery v. Anderson, 225 F.3d 833, 838 (7th Cir. 2000). Federal habeas relief is granted when a petitioner has established that the state court proceeding resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the United States Supreme Court. 28 U.S.C. sec. 2254(d)(1); Williams v. Taylor, 529 U.S. 362, 412-13 (2000). In reviewing a decision of the district

court to deny habeas relief, we review findings of fact for clear error and findings of law de novo. Moffatt v. Gilmore, 113 F.3d 698, 701 (7th Cir. 1997). Findings of fact made by the state courts are presumedcorrect and are rebutted only by clear and convincing evidence. Foster v. Schomig, 223 F.3d 626, 631 (7th Cir. 2000).

The sole issue raised in this appeal is whether the Wisconsin appellate court unreasonably applied federal law in Davis' direct appeal for an in camera review of Vance's mental health records. Davis argues that the Wisconsin appellate court erred by requiring him to make a greater showing than that required by the United States Supreme Court's holding in Pennsylvania v. Ritchie, 480 U.S. 39 (1987), for obtaining an in camera review of the records. We agree with the district court that although it may have been more prudent to grant Davis' motion for a review of Vance's mental health records, the denial of the motion was not an unreasonable application of Ritchie.

An unreasonable application of federal law encompasses situations where, among other things, "the state court identifies the correct governing legal rule from [the Supreme Court's] cases but unreasonably applies it to the facts of the particular state prisoner's case." Williams, 529 U.S. at 407. An incorrect application of clearly established federal law is not necessarily an unreasonable one. Hough v. Anderson, 272 F.3d 878, 890 (7th Cir. 2001). As such, a federal court cannot substitute its independent judgment as to the correct outcome; rather, it must determine that a state court decision was both incorrect and unreasonable before it can issue a writ of habeas corpus. Washington v. Smith, 219 F.3d 620, 628 (7th Cir. 2000).

Davis claims that the Wisconsin courts unreasonably applied the standard announced in Ritchie governing a request for in camera review of mental health records. In that case, defendant George Ritchie was charged with committing various sex offenses against his 13-year-old daughter. During pre-trial discovery, Ritchie sought review of counseling files maintained by a child protective agency concerning his daughter. Ritchie, 480 U.S. at 43. He argued that disclosure of

the files was necessary because it might aid in his defense, perhaps revealing statements his daughter made to the agency counselor that were inconsistent with her trial statements, or show that she acted with an improper motive. Id. at 51. On appeal, the United States Supreme Court held that Ritchie was entitled to an in camera review. In so doing, the Court outlined the appropriate standard for addressing Ritchie's request, stating that "the ability to question adverse witnesses . . . does not include the power to require the pretrial disclosure of any and all information that might be useful in contradicting unfavorable testimony." Id. at 53. Nevertheless, "the government has the obligation to turn over evidence in its possession that is both favorable to the accused and material to guilt or punishment." Id. at 57. The Court held that "evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." Id. (internal citations omitted). Moreover, "a 'reasonable probability' is a probability sufficient to undermine confidence in the outcome." Id. (internal citations omitted).

Davis argues that he satisfied the Ritchie standard before the Wisconsin courts in showing the likelihood that Vance's mental health records would contain evidence material to his defense. The Wisconsin court acted unreasonably, he asserts, because his offer of proof was far more directed and specific than that in Ritchie. Davis emphasizes that he presented a great deal of information, including his knowledge that Vance suffered from a mental disorder, she was a cocaine or crack user, and she took various medications. According to Davis, these conditions, depending on the circumstances, could have combined to impair her ability to perceive and describe reality on the night in question. Davis argues that this offer of proof amounts to a plausible showing that the court's inspection of the records probably would have changed the outcome. We disagree.

The "mere possibility that an item of undisclosed information might have helped the defense, or might have affected the outcome of the trial, does not establish

materiality." United States v. Agurs, 427 U.S. 97, 109-10 (1976). Despite the various factors he offered to the Wisconsin courts, Davis failed to satisfy the requisite showing of materiality to warrant an in camera review. First, Davis only argued to the state court that Vance was depressed, not delusional, and nothing in the record indicates that her depression would cause her to misperceive reality. In addition, his assertions regarding her use of stimulants are without merit because nothing in her mental health records would indicate how much cocaine or crack she actually consumed that night. Similarly, the records would not shed any light on whether she took the proper medication for her thyroid and depression problems. Moreover, Davis' request is not more directed than that in Ritchie because in that case, the files were compiled by the agency for the purpose of investigating the actual charges against the defendant. In the instant case, Davis made no showing that the requested records related in any way to the actual charged offense. The Wisconsin appellate court correctly stated that "the records were neither relevant nor helpful to a fair determination on the charges." Consequently, Davis failed to establish a "reasonable probability" that had there been an in camera review of the records, the result of the proceedings would have been different.

In addition, Davis failed to demonstrate how the sought after records would bolster his defense or add anything genuinely useful since he already possessed facts material to impeaching Vance. Davis did not need the records to prove that Vance was using stimulants that night or often neglected to take her thyroid medication because Vance admitted at the preliminary hearing that she was using drugs that night, and that she sometimes improperly medicates her thyroid condition and her depression. He was free to cross-examine Vance at trial about her use of cocaine and medications, her thyroid condition and her depression, and any effect these factors might have had on her ability to recall the events of that evening. It is noteworthy that although Davis now emphasizes the significance of Vance's tendency to misuse her thyroid and depression medications, he did not opt to address

these issues at trial. Nevertheless, the jury was made well aware of her drug abuse, and in particular, her use of drugs and alcohol on the night she complained of being assaulted. On these facts, the Wisconsin appellate court concluded that Davis did not properly demonstrate how he might benefit from anything in Vance's health records. We agree with the magistrate's recommendation that "[w]hile this is not the only conclusion the court could have reached, on these facts, it was not an unreasonable conclusion."

It is also worth noting that the prosecution presented overwhelming evidence at both the preliminary hearing and at trial that this was by no means consensual intercourse. Several witnesses corroborated Vance's story that Davis beat and sexually assaulted her. Davis' roommate testified that he heard Vance calling for help numerous times when Davis and Vance were alone in the living room of the apartment. Davis' neighbor also testified that he heard calls for help over a four hour period of time. Photographs revealed that Vance actually sustained injuries and a medical exam of Vance after the assault showed that she was battered and bruised, and had an abrasion on her vagina. This was not consensual contact. While Vance may have been using drugs on that evening, the totality of the evidence defeats any argument that Vance's version of the events is distorted.

We agree with the district court that Davis makes a strong argument for concluding that the state courts erred in their application of Ritchie. In our judgment, it may have been more prudent to grant Davis' motion for a review of the records. However, so long as the state court did not act unreasonably, we are not permitted to substitute our inde pendent judgment as to the correct outcome. Smith, 219 F.3d at 628. Davis' offer of proof did not establish a "plausible showing" that the records would be material and helpful to the defense. Although the Wisconsin courts did not couch its analysis in terms of a "plausibility" standard, this was the standard actually applied, and accordingly, their application of Ritchie was not unreasonable. As a result, we are required to deny Davis' petition for writ

of habeas corpus.

III.  CONCLUSION

For the foregoing reasons, we AFFIRM the district court's decision to deny the writ.


RIPPLE, Circuit Judge, dissenting.  Well-settled principles govern this court's review of a petition for federal habeas corpus filed by a state prisoner after the effective date of the Antiterrorism and Effective Death Penalty Act (AEDPA). Specifically, a federal court may not grant a writ of habeas corpus to a state prisoner on any claim fully adjudicated in state court unless the decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. sec. 2254(d). If a state court applies a rule that contradicts Supreme Court case law, the determination is contrary to clearly established federal law and a writ of habeas corpus may issue from the federal court. See Williams v. Taylor, 529 U.S. 362, 405 (2000). If a state-court determination correctly identifies governing Supreme Court precedent but misapplies the rule to the facts of the case before it, the state court engages in an unreasonable application of federal law. See Williams, 529 U.S. at 407. After reviewing the petition and studying the record of the state court proceedings, I must conclude that, in rejecting Mr. Davis' request to conduct an in camera inspection of Melodee Vance's medical files, the Wisconsin Court of Appeals not only articulated, but also applied, a standard contrary to clearly established Supreme Court precedent. Accordingly, the district court should have granted Mr. Davis' petition for the writ of habeas corpus.

A.

It is well-established that "the government has an obligation to turn over evidence in its possession that is both favorable to the accused and material to guilt or punishment." Pennsylvania v. Ritchie, 480 U.S. 39, 57 (1987) (citing United States v. Agurs, 427 U.S. 97 (1976)). A difficult issue arises,

however, when the defendant submits that medical and psychiatric records of the alleged victim that are within the Government's control contain information both favorable and material to his defense. In such situations, the accused has an important interest in obtaining information from the state that is relevant to his case and, indeed, probative of his guilt or innocence. At the same time, however, the Government and the alleged victim have an equally important interest in shielding from unnecessary disclosure the intensely private contents of medical or psychiatric records.

In an effort to strike a balance between these competing interests, the Supreme Court of the United States, in Pennsylvania v. Ritchie, 480 U.S. 39, 57 (1987), articulated general guidelines for when a trial court, at the request of a defendant, must conduct an in camera review of an alleged victim's confidential or privileged medical records. To obtain such an in camera inspection from the court, the defendant must "at least make some plausible showing" that these documents contain information "both material and favorable to his defense." Ritchie, 480 U.S. at 58 n.15. In articulating this standard, the Court acknowledged the practical reality that, without access to the records, an accused cannot articulate with precision the information he seeks. Accordingly, a defendant merely must establish some basis for his contention that the files contain information relevant to his case. See id. Ritchie thus eschews any requirement that, in order to obtain an in camera inspection of privileged medical records, a defendant must articulate specifically the information he seeks and its relevancy to his claim of innocence. Id. at 57 & 58 n.15.

B.

In this case, prior to trial, Mr. Davis requested that the state court conduct an in camera inspection of medical, psychiatric and mental health records of the alleged victim, Melodee Vance./1

In support of his motion, Mr. Davis, through counsel, stated:

The defendant believes and asserts that

the information contained in the records, reports and documents is material and central to his defense, insofar as there is new evidence to indicate that Ms. Vance, at the time of the alleged incident, was suffering from a mental condition which may have significantly impaired or altered her ability to perceive, interpret and relate events as they truly happened.

R.3, Ex.H. To support these contentions, Mr. Davis brought the following factual allegations to the attention of the trial court: Vance, in statements to the police, indicated that she had seen people in her apartment that, in fact, were not present;/2 near the time of the alleged assault, Vance had consumed cocaine and alcohol, substances that may have interacted with her prescription drugs; and Vance, a known user of cocaine, may have suffered from drug induced psychological disorders, such as cocaine intoxication delirium.

Although Mr. Davis' counsel reiterated many of these allegations during arguments on the motion, the trial court denied the request for an in camera inspection of Vance's medical files. The Wisconsin Court of Appeals agreed, noting that Mr. Davis was "entitled to . . . in camera inspection of the victim's privileged health records only upon showing that they are relevant and may be necessary to a fair determination of guilt or innocence." R.3, Ex.B, at 2. Moreover, in reaching its conclusion, the state court of appeals emphasized that Mr. Davis had "offered nothing to show that [Vance's] records showed a preexisting problem of that sort unrelated" to her consumption of cocaine on the night of the assault. Id. at 3.

Although, in many instances, the Wisconsin courts have been faithful to Ritchie, see, e.g., State v. Richard A.P., 589 N.W.2d 674, 677 (Wis. Ct. App. 1998), it is evident that, in this case, the Wisconsin Court of Appeals departed significantly from the mandates of that decision. Under Ritchie, a trial court must conduct an in camera inspection of the alleged victim's medical records provided that the defendant makes a "plausible showing" that the documents contain information "both material and favorable to his defense." Ritchie, 480

U.S. at 58 n.15. Contrary to this holding, the Wisconsin Court of Appeals required Mr. Davis to proffer specific evidence indicating both the relevance and materiality of these documents to his defense. The state appellate court simply misstated the standard applicable to Mr. Davis' claims. Moreover, Mr. Davis tendered to the court more than vague allegations that Vance may have suffered from a cocaine induced delirium. These submissions provided a plausible showing that Vance's medical records may provide further evidence that she suffered from a medical or psychological condition that impaired her ability to perceive on the night of the alleged assault. The Wisconsin Court of Appeals dismissed this showing and concluded that Mr. Davis failed to establish adequately that Vance suffered from a delusional illness that would warrant an in camera review of her files. By requiring the defendant to proffer further evidence in this case, the Wisconsin Court of Appeals adopted the very specificity standard that the Supreme Court had rejected in Ritchie. Therefore, the state-court determination at issue in this case is contrary to the clearly established decisional law of the Supreme Court of the United States and, also, is a misapplication of the principles of Ritchie.

C.

   The majority posits that, even if the trial court should have conducted an in camera review of Vance's medical files, any resulting error was harmless. In particular, at trial, the prosecution tendered numerous photographs that depicted the injuries that Vance suffered on the night of the incident. According to the majority, the nature of this evidence renders preposterous the defense's theory that Vance misperceived events.
   Because the state courts did not address whether the failure to conduct an in camera review constituted harmless error, we must consider the issue without reference to AEDPA's standards. See Ouska v. Cahill-Masching, 246 F.3d 1036, 1046 (7th Cir. 2001); Braun v. Powell, 227 F.3d 908, 916-17 (7th Cir. 2000). Under pre-AEDPA standards, in determining whether a constitutional error was harmless, the court determines whether the error "had substantial and injurious

effect or influence in determining the jury's verdict" resulting in "actual prejudice" to the defendant. Brecht v. Abrahamson, 507 U.S. 619, 638 (1993)(citing Kotteakos v. United States, 328 U.S. 750, 776 (1946)). Because the federal court is engaging in only a collateral review, "the error in question need not be harmless beyond a reasonable doubt." Jenkins v. Nelson, 157 F.3d 485, 494 (7th Cir. 1998). However, if the court faces "grave doubt as to the harmlessness of the error," the conviction must be reversed and a writ of habeas corpus issued to the petitioner. O'Neal v. McAninch, 513 U.S. 432, 436 (1995).

   During Mr. Davis' trial, the strength of the prosecution's case rested heavily on Vance's testimony and the photographs of her injuries./3 Mr. Davis' defense rested primarily on his view that Vance was not a witness whose testimony can be trusted, given her medial history and drug abuse. In essence, then, Vance's credibility and her perceptions of the events that transpired on the night of the purported incident proved critical to the conviction of Mr. Davis. Because the trial court declined to conduct an in camera inspection of Vance's records, no one is able to say definitively whether the documents contained information relevant to Vance's ability to perceive events. Based on Mr. Davis' significant showing of Vance's possible medical and psychological problems, it seems probable that the medical documents may have contained information that would have made a significant difference in the quality of the defense available to Mr. Davis. Under these circumstances, I have grave doubts as to the harmlessness of the error. See O'Neal v. McAninch, 513 U.S. 432, 436 (1995). Because of this concern, I must respectfully dissent from the judgment of the court.

FOOTNOTES

/1 A review of the record makes it evident that the files Mr. Davis sought were not under the direct control of the prosecutor. To the contrary, many of the requested documents resided with the Wisconsin Department of Corrections ("WDOC"). This court's opinion in United States v. Hach, 162 F.3d 937 (7th Cir. 1998), may have left the impression that Ritchie only applies to documents within the hands of the prosecutorial authori-

ties. See Hach, 162 F.3d at 947. Such an interpretation of Hach would be erroneous, however. It would be directly at odds with Ritchie. Specifically, in Ritchie, the prosecutor did not possess the documents potentially subject to an in camera review, see Ritchie, 480 U.S. at 44 n.4; rather, another arm of the state government controlled the files in question. Yet, the Supreme Court indicated that, upon the proper showing, the defendant in Ritchie was entitled to an in camera inspection of these documents.

Notably, at oral argument, the State of Wisconsin disavowed any reliance on a restrictive reading of Hach that would cause it to be in conflict with Ritchie and seemingly conceded that the documents controlled by WDOC fell within Ritchie's ambit.

/2 In her motion to the trial court, Mr. Davis' counsel indicated that Exhibit #1, attached to the motion, corroborated this contention. However, Exhibit #1, selected pages from the testimony of Vance at the preliminary hearing, contains no reference to Vance having seen people who were not there. Moreover, a review of the remainder of the appellate record does not reveal any other corroboration for this statement.

/3 The State also produced a witness who testified he heard Vance crying in Mr. Davis' room on the night of the alleged assault. That testimony was partially corroborated by the testimony of a neighbor. There was also medical testimony, testimony which, when evaluated in its totality as it is presented in the appellate record, leaves me with some doubt as to the nature and extent of Vance's injuries.