In the

# United States Court of Appeals

## For the Seventh Circuit

No. 12-1672

ROBERT J. DIETRICH,

*Petitioner-Appellant*,

*v.*

JUDY P. SMITH,

*Respondent-Appellee.*

Appeal from the United States District Court
for the Eastern District of Wisconsin.
No. 2:11-cv-00117-WEC—**William E. Callahan, Jr.,** *Magistrate Judge.*

ARGUED SEPTEMBER 17, 2012—DECIDED DECEMBER 4, 2012

Before EASTERBROOK, *Chief Judge*, and BAUER and WOOD, *Circuit Judges*.

BAUER, *Circuit Judge*. Robert J. Dietrich pleaded guilty to first-degree sexual assault of a child in violation of Wis. Stat. § 948.02(1)(b) and was sentenced to thirteen years of initial confinement and ten years of extended supervision. After exhausting his post-conviction remedies in the Wisconsin courts, Dietrich filed a petition for a writ of habeas corpus under 28 U.S.C. § 2254 in the

Eastern District of Wisconsin. The district court denied relief, but granted a certificate of appealability on the question of whether Dietrich's due process rights were violated when the state trial court did not conduct an *in camera* review of the victim's counseling records prior to her therapist testifying at Dietrich's sentencing hearing. For the following reasons, we affirm.

## I. BACKGROUND

In 2006, B.T., then fourteen years old, was failing her freshman year of high school. She was also having trouble with her friends at school, who had accused her of making a bomb threat. In April 2006, she attempted suicide. In July 2006, B.T. told the police that Dietrich, a family friend, had sexually assaulted her between June and August 2004 when she was twelve years old.

Dietrich was charged in Milwaukee County Circuit Court with one count of repeated first-degree sexual assault of a child and two counts of intimidation of a child victim. The complaint alleged that during the summer of 2004, Dietrich had multiple sexual encounters with twelve-year-old B.T. Dietrich entered not guilty pleas on all counts.

In a pre-trial motion, Dietrich sought an *in camera* review of B.T.'s counseling records. Dietrich believed the records would show that though the alleged sexual assaults occurred in 2004, B.T. did not tell her therapist about the assaults until after her April 2006 suicide attempt. Dietrich's defense rested on his conjecture that

B.T. invented the allegations of sexual assault in order
to deflect the police and her parents from the true
reasons for her mental anguish, namely trouble with
friends at school. The State opposed the motion on the
grounds that the records were privileged. Relying upon
*State v. Green*, 646 N.W.2d 298, 310 (Wis. Ct. App. 2002),
the trial court denied Dietrich's motion, reasoning that
Dietrich had failed to demonstrate a reasonable likeli-
hood that B.T.'s mental health records actually contained
relevant information necessary for a determination of
his guilt or innocence.

Dietrich subsequently reached a plea agreement with
the district attorney and pleaded guilty to one count of
first-degree sexual assault of a child. In exchange for
Dietrich's guilty plea, the State agreed to move to
dismiss counts two and three, and to recommend ten
years of initial confinement in prison, with the amount
of extended supervision left up to the court.

At the sentencing hearing, the State called several
witnesses including B.T.'s therapist, who was called to
to testify regarding how the sexual assaults had affected
B.T.'s life. Dietrich objected and argued that in light of
the denial of his pre-trial motion for an *in camera*
review of B.T.'s records, it was "not fair" to allow her
therapist to testify at sentencing because he had no way
to challenge the therapist's statement. The State re-
sponded that the therapist was only providing the
court with her opinion, and that the court could give
whatever weight to her testimony that it deemed appro-
priate. The trial court agreed with the State and allowed
the therapist to testify.

B.T.'s therapist testified that B.T. was diagnosed with Post Traumatic Stress Disorder and reported having nightmares and daytime flashbacks that were impacting her at school. She also stated that B.T. was hospitalized on two separate occasions for suicide ideation and self-mutilation, which she attributed to B.T. hiding the sexual assaults. B.T.'s therapist also opined that the abuse negatively affected B.T.'s relationships with others and her ability to trust people. Dietrich, in turn, provided the court with a sentencing memorandum setting forth alterative reasons for B.T.'s self-destructive behavior. Dietrich also provided the court with a report from his therapist, who stated that Dietrich was not a pedophile motivated by an attraction to adolescent girls, but rather that this crime was a isolated incident. Ultimately, Dietrich was sentenced to thirteen years of initial confinement, three years longer than recommended by the State, and an additional ten years of extended supervision.

After sentencing, Dietrich filed a post-conviction motion asking the trial court to vacate his sentence and order a re-sentencing. Dietrich asserted, among other things, that his due process rights were violated when he was denied an *in camera* review of B.T.'s counseling records before her therapist made a statement at his sentencing hearing. His motion was denied on all counts. Dietrich then filed a notice of appeal to the Wisconsin appellate court. The appellate court affirmed the trial court in all aspects. Dietrich petitioned the Wisconsin Supreme Court for review, and the petition was denied. Dietrich then petitioned the district court for

federal habeas corpus relief pursuant to 28 U.S.C. § 2254(d). On February 23, 2012, the district court denied Dietrich's petition, but granted him a certificate of appealability on the sole issue of whether Dietrich's due process rights were violated when the circuit court declined to conduct an *in camera* review of B.T.'s counseling records before allowing B.T.'s therapist to testify at Dietrich's sentencing hearing.

## II. DISCUSSION

Dietrich acknowledges, as he must, that under the Antiterrorism and Effective Death Penalty Act ("AEDPA"), federal courts may only grant habeas relief if the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law." 28 U.S.C. § 2254(d). In this case, we review the decision of the Wisconsin appellate court, and we will not disturb its decision unless it is "both incorrect and unreasonable." *Etherly v. Davis*, 619 F.3d 654, 660 (7th Cir. 2010). That standard is not met unless the decision in question is objectively unreasonable and falls "well outside the boundaries of permissible differences of opinion." *Id.*

Dietrich contends that he could not meaningfully question the validity of B.T.'s therapist's testimony without first viewing B.T.'s counseling records, or more precisely, without the trial court viewing B.T.'s counseling records *in camera.* The district court concluded that this issue possibly implicated Dietrich's due process rights based on the Supreme Court precedent set forth in *Pennsylvania v. Ritchie*, 480 U.S. 39, 107 S.Ct. 989, 94 L.Ed.2d

40 (1987). Ultimately, the district court decided that *Ritchie* did not entitle Dietrich to relief, but granted a certificate of appealablity on that issue. We agree that *Ritchie* is the relevant Supreme Court case that addresses the standard for an *in camera* review of otherwise privileged records; we will therefore examine Dietrich's claim under its precedent.[1]

In rejecting Dietrich's claim, the Wisconsin appellate court relied on *State v. Robertson*, 661 N.W.2d 105 (Wis. Ct. App. 2003), in which the defendant sought post-conviction discovery of confidential medical records. The *Robertson* court held that to be entitled to an *in camera* inspection of privileged records, a defendant must make a preliminary showing that the sought-after evidence is material to his or her defense. *Id*. at 109. The *Robertson* court went on to say that a defendant must demonstrate that the evidence being sought is relevant, and may be helpful to the defense, or is necessary to a fair determination of guilt or innocence, in order to compel an *in camera* review. *Robertson*, 661 N.W.2d at 109. Thus, even

---

[1] Although the proceeding at issue in *Ritchie* was pre-trial discovery, we stand with the Sixth Circuit on this issue and see no reason why *Ritchie* should not apply to sentencing proceedings as well. In *United States v. Powell*, 423 F. App'x 602, 608 (6th Cir. 2011) (unpublished), the Sixth Circuit applied *Ritchie* to the defendant's sentencing hearing and declined to remand for an *in camera* review because the defendant failed to establish a basis for his claim that the records he sought contained material evidence that would affect the outcome of sentencing.

though the appellate court did not cite *Ritchie* directly, it did apply its constitutional standards through *Robertson*. We therefore now turn to whether the court's denial of Dietrich's request for an *in camera* review was an unreasonable application of *Ritchie*.

In *Ritchie*, the defendant was accused of molesting his thirteen-year-old daughter. Ritchie sought discovery of the daughter's files held by Pennsylvania's Children and Youth Services ("CYS") agency because he believed they might contain the names of favorable witnesses, a medical report from the CYS investigation, and other unspecified exculpatory evidence. *Ritchie*, 480 U.S. at 44, 107 S.Ct. 989. The State argued that the files were privileged and cited a Pennsylvania statute that forbade disclosure, short of a court order. Because the privileged CYS files at issue were in the custody of the agency, neither the government, the defense, or the court reviewed them in their entirety prior to trial. *Id*. at 44, 107 S.Ct. 989. Acknowledging he had not reviewed the file completely, the trial judge accepted CYS' representation that the file did not contain a medical report, and denied discovery. *Id*. at 44, 107 S.Ct. 989.

On appeal, Ritchie argued that the trial court's denial of a review of the unseen, privileged CYS files prevented him from learning the names of the "witnesses in his favor," as well as other evidence that might be contained in the file. *Ritchie*, 480 U.S. at 55, 107 S.Ct. 989. Ritchie argued that this denial implicated his Compulsory Due Process rights. The Sixth Amendment of the United States Constitution protects both the right of

confrontation and the right of compulsory process by requiring that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him; [and] to have compulsory process for obtaining witnesses in his favor." U.S. CONST. amend. VI. In considering the argument, the Supreme Court noted that it had never squarely held that the Compulsory Process Clause guarantees the right to discover the identity of witnesses or to require the government to produce exculpatory evidence. *Id*. at 56, 107 S.Ct. 989. As a result, the Court chose to analyze Ritchie's claim under the "clear framework" of the Fourteenth Amendment and did not decide whether or how the guarantees of the Compulsory Process Clause differ from those of the Fourteenth Amendment. *Id.* at 56, 107 S.Ct. 989. However, the Court made a point of noting that the compulsory process rights provide no greater protections in this area than those afforded by due process. *Id.*

The Supreme Court ultimately remanded, finding that Ritchie was entitled to have the CYS file reviewed by the trial court to determine whether it contained information that probably would have changed the outcome of his trial. In reaching this conclusion, the Court addressed the burden that a defendant must meet, in order to obtain an *in camera* review of privileged records, in a footnote as follows:

> The Commonwealth also argues that Ritchie is not entitled to disclosure because he did not make a particularized showing of what information he was

seeking or how it would be material. See Brief for Petitioner 18 (quoting *United States v. Agurs,* 427 U.S. 97, 109-110, 96 S.Ct. 2392, 2400-01, 49 L.Ed.2d 342 (1976) ("The mere possibility that an item of undisclosed information might have helped the defense . . . does not establish 'materiality' in the constitutional sense")) Ritchie, of course, may not require the trial court to search through the CYS file without first establishing that it contains material evidence. See *United States v. Valenzuela-Bernal*, 458 U.S. 858, 867, 102 S.Ct. 3440, 3446, 73 L. Ed. 2d 1193 (1992) ("He must at least make some plausible showing of how their testimony would have been both material and favorable to his defense"). Although the obligation to disclose exculpatory material does not depend on the presence of a specific request, we note that the degree of specificity of Ritchie's request may have bearing on the trial court's assessment on remand of the materiality of the nondisclosure. See *United States v. Bagley*, 473 U.S. 667, 682-683, 105 S.Ct. 3375 3383-3384, 87 L.Ed.2d 481 (1985) (opinion of BLACKMUN, J.).

*Ritchie*, 480 U.S. at 58 n.15., 107 S.Ct. 989.

It is clear from this footnote, that although the Court ultimately concluded Ritchie was entitled to an *in camera* review, the Court intended to require a defendant to first make a plausible showing that the privileged record at issue contained material evidence, rather than for an *in camera* review of confidential files to be an automatic entitlement owed to the defendant. That is, the Court

stated that a defendant cannot obtain an *in camera* review without "first establishing a basis for his claim that it contains material evidence." *Id.*

We addressed this requirement in *Davis v. Litscher*, 290 F.3d 943, 945 (7th Cir. 2002). In *Davis* the petitioner was convicted of sexually assaulting and beating his girlfriend and sought habeas relief, asserting that his constitutional rights were violated when the trial court denied his motion for an *in camera* inspection of the victim's mental health records. The petitioner contended that the Wisconsin appellate court violated his due process rights by requiring him to make a greater showing than necessary under *Ritchie* for an *in camera* review. *Id*. We found that the files the petitioner sought would not have shed any additional light on the victim's mental state on the night of the attack, as he suggested. *Id*. at 948. Rather, any evidence as to the victim's drug habit would be cumulative considering the victim admitted she was using drugs on the night in question during a preliminary hearing. *Id*. Affirming the district court, we held that the defendant failed to make a "plausible showing" that the evidence he sought would be material and helpful to the defense. *Id*.

The Sixth Circuit has also addressed the burden a defendant must reach under *Ritchie* in *Renusch v. Berghuis*, 75 F. App'x 415 (6th Cir. 2003) (unpublished). Our sister circuit reasoned in *Renusch* that the clearly established rule of *Ritchie* is that, given a privilege statute like Pennsylvania's, a defendant is "entitled to have a [government social services] file reviewed by the

trial court to determine whether it contains information that probably would have changed the outcome of his trial, but only if the defendant has established a basis for his claim that it contains material evidence, e.g. by making some 'plausible showing' of how [the] testimony would have been both material and favorable to [the] defense." *Id*. at 424. We agree that this is the correct articulation of the standard set forth in *Ritchie*.

Applying *Ritchie* to the instant case, the Wisconsin appellate court found that Dietrich's due process claim was insufficient because he failed to make a plausible showing that the victim's counseling records would produce material evidence. We find this to be a reasonable application of *Ritchie.* The Supreme Court did not intend to require the trial court to undertake a blind fishing expedition through a victim's mental health records for the sole purpose of possibly uncovering additional evidence that may aid in cross-examination, which the defendant has independently and speculatively determined would probably be most effective. In fact, the *Ritchie* plurality flatly rejected the argument that a defendant is entitled to access confidential records simply to aid in cross-examination: "[T]he Confrontation Clause only guarantees an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent the defense might wish." *Ritchie*, 480 U.S. at 53 (citing *Delaware v. Fensterer*, 474 U.S. 15, 20, 106 S.Ct. 292, 99 L.Ed.2d 15 (1985)). The Court specifically noted that the ability to question adverse witnesses does not include the power to require the pretrial disclosure of any and all information

that might be useful in contradicting unfavorable testimony. *Ritchie*, 480 U.S. at 53.

Here, Dietrich sought B.T.'s counseling records in the hopes of finding evidence that would allow him to more effectively rebut B.T.'s therapist's conclusion that the sexual assaults were the cause of B.T.'s psychological problems. Dietrich argues that had he been able to see B.T.'s counseling records, he believed those records would show that B.T. herself had attributed her suicide attempt to troubles she was having with her school friends, rather than Dietrich's sexual assault. Nonetheless, Dietrich had already offered this evidence to the court through a report by the St. Francis Police Department that stated that B.T. told the officers that she attempted suicide because her friends at school were being mean to her and accused her of making a bomb threat. Therefore, the trial court rightly concluded that no *in camera* review of B.T.'s counseling records was necessary because even if the files contained the exact information Dietrich speculated existed, that information was first and foremost immaterial and cumulative at best.

The heart of the matter in *Ritchie* was whether a statutorily mandated privilege trumped a defendant's due process right to potentially exculpatory evidence. Because the subject statute in *Ritchie* allowed for disclosure of the privileged file, via a court order, the Supreme Court held that the legislature did not intend this privilege to be absolute and remanded the case for the trial court to conduct an *in camera* review of the file. The difference between the facts in *Ritchie,* that required a remand for

an *in camera* review, and the facts in this case, is that in *Ritchie* the defendant sought undisputedly material evidence (namely favorable witnesses) from his daughter's file that, if found, possibly could have changed the outcome of his trial.

In this case, Dietrich had already pleaded guilty to this crime; therefore the evidence was obviously not being sought because he believed it would be favorable to his defense. Instead, Dietrich sought evidence from privileged records in order to rebut testimony at his sentencing hearing. The evidence sought was immaterial, cumulative, and even if found, would not have altered the outcome of Dietrich's sentencing proceeding. First, Dietrich already possessed evidence to rebut the therapist's conclusions as to the cause of B.T.'s psychological issues. Dietrich provided the court with a police report in which B.T. stated she attempted suicide because of trouble with friends at school, so any additional information from B.T.'s mental health records offering that her issues with friends were to blame for her mental anguish, as Dietrich hypothesized, would be cumulative evidence. Additionally, even if the files contained the exact evidence Dietrich speculated they did, this evidence is immaterial. Whether B.T. had additional factors in her life that were negatively affecting her mental state, such as having trouble with her friends at school, does not mean that B.T. did not suffer psychological consequences after being sexually assaulted by a thirty-year-old man.

In fact, the trial court made no mention of B.T.'s therapist's opinion during sentencing. Rather, the trial court

specifically noted that the pivotal issue for the court was Dietrich's attempt to shift the blame for the sexual offense to the twelve-year-old victim. The court cited Dietrich's therapist's report that indicated that Dietrich believed that the "offense would not have happened had the child not been overly affectionate." The court took great issue with Dietrich's failure to take complete responsibility for his actions.

The sentencing court explained how it wrestled with the two factual scenarios it was presented as to what occurred in this case.

> I have [Dietrich's] version that talks about, if you will, an affectionate, promiscuous, encouraging, curious and interested twelve-year-old who initiated sexual contact because of a crush towards you, who then after engaging in this behavior undertook a course of self-destruction wherein she mutilated herself, tried to kill herself, and generally allowed her life to spiral out of control. Conversely, I have a twelve-year-old who reports inappropriate sexual contact that ultimately culminated in sexual inter-course in various forms as defined by the law over a two-and-a-half month period of time, not just re-flecting one moment or instant in time. . . . Accord-ingly, you have and haven't accepted responsibility.

There is nothing in the record to indicate that the court placed any material weight on B.T.'s therapist's testimony. The sentencing court, instead, took umbrage with Dietrich's failure to take full responsibility for his crime. Therefore, there is nothing to suggest that

Dietrich's sentencing hearing would have had a different outcome had the court conducted an *in camera* review of B.T.'s counseling records, and Dietrich found the exact evidence he speculated might exist in those records. We therefore find that the Wisconsin appellate court reasonably applied *Ritchie* in this case, as Dietrich failed to make a plausible showing that the victim's counseling records contained evidence material to his defense.

### III.  CONCLUSION

For the foregoing reasons, we AFFIRM the judgment of the district court.