In the

# United States Court of Appeals

## For the Seventh Circuit

No. 16-2247

TIMOTHY D. MOSELEY,

*Petitioner-Appellant,*

*v.*

PAUL S. KEMPER, Warden,

*Respondent-Appellee.*

Appeal from the United States District Court for the
Eastern District of Wisconsin.
No. 15-CV-0035 — **William C. Griesbach**, *Chief Judge.*

ARGUED APRIL 13, 2017 — DECIDED DATE JUNE 27, 2017

Before POSNER, MANION, and KANNE, *Circuit Judges.*

KANNE, *Circuit Judge.* Timothy Moseley was convicted on three counts of possessing nude photos of T.H. that were taken without her consent. Prior to trial, Moseley moved to have the court review T.H.'s mental-health records in camera. At issue here is whether the Wisconsin appellate court's decision denying that motion is "contrary to, or involved an unreasonable application of" Supreme Court precedent. 28 U.S.C. § 2254(d)(1).

Because the Wisconsin appellate court's decision is not substantially different from Supreme Court precedent and because the court did not unreasonably apply that precedent to Moseley's case, we reject those arguments.

## I. BACKGROUND

Milwaukee police officers arrested Moseley at his house after M.K. accused him of domestic violence. While searching Moseley's apartment, officers found handcuffs, rope, and other items associated with sexual bondage and seized Moseley's computer, camera, external hard drive, and CDs. The Milwaukee Police Department sent the electronic devices to the Computer Crimes Unit at the Department of Justice. When DOJ detectives searched the devices, they discovered several nude photos of M.K. and several nude photos and videos of another woman, T.H.

T.H. worked with Moseley at a U.S. Marshal's office in Wyoming. In her statement to the police, T.H. alleged that Moseley forced her into a sexual relationship by threatening her job. Her statement also chronicled his abusive behavior throughout their relationship. For instance, she claimed that she once passed out after drinking coffee that Moseley had given her. She said that, while she was drifting in and out of consciousness, someone handcuffed her, blindfolded her, and took off her clothes. Investigators found photos of that incident on Moseley's computer, as well as other photos of T.H. that were allegedly taken without her consent.

The state charged Moseley with eight counts of possessing nude photos of T.H. taken without her consent. Wis. Stat. § 942.09(2)(am)3. Moseley's primary defense was that he

and T.H. had been in an ongoing, consensual relationship and that T.H. had consented to the photos.

Before trial, Moseley moved to have the court review T.H.'s mental-health records in camera. According to Moseley, T.H. had memory problems. He argued that T.H.'s records contained evidence related to her memory that he could use to impeach her credibility at trial. He also suggested that the records might contain statements by T.H. that indicate their relationship was consensual. The trial court denied the motion, and the jury convicted Moseley on three of the eight counts.

Moseley appealed his conviction. The Wisconsin appellate court affirmed the trial court's denial of in camera review, holding that Moseley had not shown "a specific factual basis demonstrating a reasonable likelihood that the records contain relevant information necessary to a determination of guilt or innocence and is not merely cumulative." (R. 10-4 at 8–9 (quoting *State v. Green*, 646 N.W.2d 298, 310 (Wis. 2002)).) According to the court, the information was immaterial: even if T.H. had consented to some part of her relationship with Moseley, that was irrelevant to whether she had consented to the taking of the photos at issue. The court also concluded that the information was cumulative: T.H.'s memory issues were on clear display to the jury because she answered "many questions with 'I don't recall.'" (R. 10-4 at 9.) The Wisconsin Supreme Court denied Moseley's petition for review.

Moseley then filed a petition for a writ of habeas corpus in federal district court. He argued that the Wisconsin appellate court's decision was contrary to clearly established Supreme Court precedent because the court applied Wiscon-

sin's standard for obtaining in camera review from *Green* instead of the Supreme Court's standard from *Pennsylvania v. Ritchie*, 480 U.S. 39, 58 n.15 (1987). In the alternative, he argued that, even if the Wisconsin standard from *Green* is not contrary to *Ritchie*, the Wisconsin appellate court unreasonably applied the standard to his case. The district court denied the petition but granted a certificate of appealability as to whether Moseley was constitutionally entitled to have the court review T.H.'s records in camera. This appeal followed.

## II. ANALYSIS

Moseley is entitled to federal habeas relief only if he can show that the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." § 2254(d)(1). To do this, Moseley must show that the state court's decision was either "contrary to" federal law or was "an unreasonable application" of federal law. *Bell v. Cone*, 535 U.S. 685, 694 (2002). Moseley makes both arguments here: first, he argues that the Wisconsin appellate court's decision is contrary to the Supreme Court's decision in *Ritchie*; and second, he argues that, even if the Wisconsin appellate court's decision is not contrary to *Ritchie*, it applied *Ritchie* unreasonably.

A state court's decision is "contrary to" clearly established federal law "if the state court applies a rule different from the governing law set forth in [Supreme Court] cases." *Id.*; *see also Emerson v. Shaw*, 575 F.3d 680, 684 (7th Cir. 2009). The dispute here is about what a defendant must show before a court will review confidential documents in camera. To be sure, the Wisconsin Supreme Court and the United States Supreme Court have differently worded standards for

obtaining in camera review of confidential documents. The Wisconsin Supreme Court has held that a defendant must show "a specific factual basis demonstrating a reasonable likelihood that the records contain relevant information necessary to a determination of guilt or innocence and is not merely cumulative to other evidence available to the defendant." *Green*, 646 N.W.2d at 310. And the United States Supreme Court has held that a defendant must "make some plausible showing of how" the records would be "both material and favorable to his defense." *Ritchie*, 480 U.S. at 58 n.15.

Nevertheless, "contrary to" means much more than a difference in language; it means "'diametrically different,' 'opposite in character or nature,' or 'mutually opposed.'" *Alston v. Smith*, 840 F.3d 363, 368 (7th Cir. 2016) (quoting *Williams v. Taylor*, 529 U.S. 362, 405 (2000)). In short, "the state court's decision must be substantially different from the relevant" Supreme Court precedent for there to be an issue under § 2254(d)(1). *Williams*, 529 U.S. at 405.

Moseley's argument under the "contrary to" prong of § 2254(d)(1) is that Wisconsin courts require "a specific factual showing" while the Supreme Court requires only a "plausible showing." According to Moseley, the Supreme Court's standard requires less of defendants seeking in camera review. But other than to repeat the different language, Moseley does not explain how the standards are different. Moseley offers no explanation for how one can make a "plausible showing" without presenting the court some factual basis for believing that the records contain material and favorable evidence. Even under *Ritchie*, "[t]he mere possibility that … undisclosed information might have helped the

defense … does not establish 'materiality' in the constitutional sense." *Ritchie*, 480 U.S. at 58 n.15 (quoting *United States v. Agurs*, 427 U.S. 97, 109–10 (1976)). And Wisconsin courts don't require a defendant to prove what is in the records before obtaining in camera review; instead, the "test essentially requires the court to look at the *existing evidence* in light of the request and determine … whether the records will likely contain evidence that is independently probative to the defense." *Green*, 646 N.W.2d at 310 (emphasis added). So the standard under *Ritchie* is more burdensome than Moseley presumes; the *Green* standard less so. Consequently, the standards do not diverge in any meaningful way and are not "contrary to" one another in the way that the Supreme Court has defined the phrase.[1]

Moseley's argument that the Wisconsin appellate court unreasonably applied *Ritchie* fares no better.[2] A state court's decision is "unreasonable" under § 2254(d)(1) "if the state

---

[1] This is the third time that we have held that Wisconsin's standard for obtaining in camera review of confidential documents is not contrary to *Ritchie. See Dietrich v. Smith*, 701 F.3d 1192, 1195 (7th Cir. 2012); *Rizzo v. Smith*, 528 F.3d 501, 506 (7th Cir. 2008); *Davis v. Litscher*, 290 F.3d 943, 946–48 (7th Cir. 2002).

[2] Throughout his case, Moseley continually made reference to the fact that the prosecuting attorneys had T.H.'s mental-health records. Moseley argues that the Wisconsin appellate court unreasonably applied *Ritchie* because the documents were not privileged after she disclosed them to the prosecution. According to Moseley, some lesser relevancy standard should have applied instead of *Ritchie*. But the Wisconsin appellate court held that the records were confidential under Wisconsin law, and we cannot grant habeas on the "belief that a state court has misunderstood or misapplied state law." *Huusko v. Jenkins*, 556 F.3d 633, 637 (7th Cir. 2009).

court correctly identifies the governing legal principle … but unreasonably applies it to the facts of the particular case." *Bell*, 535 U.S. at 694. Unreasonable truly means unreasonable: it "demands more than 'just' an incorrect application of federal law." *Winston v. Boatwright*, 649 F.3d 618, 624 (7th Cir. 2011). The state court's decision is reasonable "so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

At the trial court, Mosely argued that the entire case was a credibility dispute. According to Moseley, T.H.'s mental-health records were important because "T.H. ha[d] been diagnosed with memory lapses and memory problems and suffered from a mental illness/psychological disorder at the time of the alleged incident," T.H. had "told her therapist about the sexual abuse she suffered at the hands of the Defendant," and T.H. had referenced her "conversations about the alleged abuse by the Defendant with her counselor and her lapses in memory." (R. 10-2 at 69–70.) Moseley also argued that T.H. might have told her therapist that she consented to a sexual relationship with him. He presented the same arguments to the Wisconsin appellate court and in his petition for review to the Wisconsin Supreme Court.[3]

---

[3] In his brief, Moseley points to nine facts that he claims make a plausible showing that T.H.'s records contain evidence material and favorable to his defense. But that evidence first appeared in his habeas petition to the district court. He did not present those particular factual allegations to *any* Wisconsin court. A state court's decision cannot be unreasonable for failing to consider evidence never presented to it. *Cullen v. Pinholster*, 563 U.S. 170, 181–82 (2011).

Moseley's allegations might have been enough to induce the court to grant in camera review but it was not unreasonable to deny his motion, either. As the Wisconsin appellate court held, it's not altogether clear why the evidence is relevant, let alone material. *See United States v. Cruz-Velasco*, 224 F.3d 654, 662 (7th Cir. 2000). Moseley continually alleged that his relationship with T.H. was consensual. But the case had nothing to do with whether some of their relationship was consensual but rather with whether T.H. consented to the photos in question. Consent to sex or to a relationship in general does not equate to consent to have explicit photos taken. And Moseley never argued that T.H.'s records would prove she consented to the photos, only that she might have told her therapist she consented to a relationship with him.

Nor was it unreasonable for the Wisconsin appellate court to hold that the records did not contain material impeachment evidence. Cumulative impeachment evidence is not material. *United States v. Bailey*, 510 F.3d 726, 737 (7th Cir. 2007). Moseley wanted access to T.H.'s records in part to expose T.H.'s alleged memory problems. But as the Wisconsin appellate court noted, Moseley had more than a fair opportunity to bring T.H.'s alleged memory problems to the jury's attention. During cross-examination, T.H. responded to many questions from Moseley's attorney by saying that she could not remember. The Wisconsin appellate court reasonably concluded that any comments T.H. made to her therapist about her memory problems would have been cumulative of her testimony in front of the jury.

### III. CONCLUSION

For those reasons, the district court's denial of Moseley's petition for a writ of habeas corpus is AFFIRMED.